**Erick WILLIAMS, Appellant,**

v.

**UNITED STATES, Appellee**

**No. 01–CF–612.**

District of Columbia Court of Appeals.

Argued May 6, 2004.

Decided Sept. 16, 2004.

---

Corinne Beckwith, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for appellant.

Heather Phillips, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Roy W. McLeese, III, and D. Ames Jeffress, Assistant United States Attorneys, were on the brief, for appellee.

Before: WAGNER, Chief Judge, and REID, Associate Judge, STEADMAN, Associate Judge, Retired.**

** Judge Steadman was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on August 8, 2004.

WAGNER, Chief Judge:

Appellant, Erick Williams, was indicted on charges of first degree premeditated murder while armed (D.C.Code §§ 22–2401, –3202 (1996)),[1] possession of a firearm during a crime of violence or dangerous offense (D.C.Code § 22–3204(b) (1996)) (PFCV),[2] carrying a pistol without a license (D.C.Code § 22–3204(a) (1996)) (CPWL), unlawful possession of a pistol by a convicted felon (D.C.Code § 22–3202(a)(3) (1996)), threatening to injure a person (D.C.Code § 22–2307 (1996)),[3] assault with intent to kill while armed (D.C.Code §§ 22–501, –3202 (1996)) (AWIKw/a),[4] possession of an unregistered firearm (D.C.Code §§ 6–2311, –2376 (1995)),[5] and unlawful possession of ammunition (D.C.Code §§ 6–2311, –2376 (1995)).[6] Following a jury trial, Williams was convicted of voluntary manslaughter while armed (a lesser-included offense of the original first-degree murder charge) in connection with the death of Leander Crowe, PFCV, CPWL and unlawful possession of a pistol by a convicted felon.[7] He argues for reversal on the grounds of: (1) instructional error in response to jury notes; (2) improper submission of the offenses of first- and second-degree murder to the jury; and (3) denial of his request to reopen his case to present newly discovered bias testimony. We find no error warranting reversal, and therefore affirm.

## I. *Factual Background*

The charges arose out of the fatal shooting of Leander Crowe in the area of Georgia Avenue and Fairmont Street, N.W. in the District of Columbia on the night of February 16, 1999. According to evidence presented by the government, just before the shooting, Crowe, the ex-boyfriend of Michelle Anderson, spotted her on the street with appellant, her new male companion, and her brother, Charles Anderson. According to the evidence, Crowe got out of his car and approached them. Appellant asked Ms. Anderson who Crowe was, and she responded that he was her ex-boyfriend. Ms. Anderson crossed the street to speak with Crowe, who appeared to be angry, and Crowe began yelling and cursing at her. Appellant approached them, stood by Ms. Anderson, and then pushed Crowe in the chest and asked, "What's up?" Crowe pushed appellant back, and both men pulled up their shirts, each revealing a gun in his waistband. The men pushed each other again, and Crowe fell back. Both men drew their weapons, but appellant fired the first shot, missing Crowe. He shot again, this time striking Crowe in the left arm. Crowe continued to try to get his gun out of his waistband, but it fell to the ground, and he fell back on top of it. As Crowe tried to get his weapon, appellant went over to him, shot him several times in the chest, and said to Crowe, "you going to die." Charles Anderson called the police from a pay telephone. When appellant saw Anderson, he pointed the gun at him and asked, "you snitching?" Charles Anderson testified that he hid between the tele-

---

1. Recodified at D.C.Code §§ 22–2101, –4502 (2001).

2. Recodified at D.C.Code § 22–4504 (2001).

3. Recodified at D.C.Code § 22–1810 (2001).

4. Recodified at D.C.Code §§ 22–401,–4502 (2001).

5. Recodified at D.C.Code §§ 7–2502.01, –2507.06 (2001).

6. Recodified at D.C.Code §§ 7–2506.01, –2507.06 (2001).

7. The jury found appellant not guilty of assault with intent to kill and threatening to injure Charles Anderson.

phones and heard more shots before the police arrived.

Officer John Spencer testified that when he arrived at the scene, Crowe was lying on the ground and struggling to breathe. The officer testified that Crowe asked him to tell his mother that he was dying and that "Erick did it." The police found on the ground near Crowe a Glock 9mm gun, with a 16-bullet capacity, containing 12 bullets. Although there was evidence that the Glock had been fired, there was also testimony that it could not be determined when it had been fired. Ms. Ruthie Randall, who worked in a store at the intersection of Georgia Avenue and Fairmont Street and lived next door, testified that there were bullet holes in the store's window after the shooting that had not been there previously. There was also evidence that a car near the scene of the shooting had in it what appeared to be bullet holes.

Appellant testified that he was walking with Ms. Anderson and Charles Anderson when Crowe drove up to them and started pointing and making gestures. He said that he asked Ms. Anderson who Crowe was, and she replied that he was her ex-boyfriend. He testified that Ms. Anderson had told him previously that her ex-boyfriend beat her in the past and that he carried a gun. Appellant said that he thought that Crowe might try to assault Ms. Anderson. Ms. Anderson ran across the street to Crowe, but soon Crowe started walking toward appellant with his fists balled up, while cursing at Ms. Anderson. Appellant testified that as Ms. Anderson and Crowe argued, he "ran up behind [Crowe] and pushed him away from her." He described the immediate circumstances of the shooting as follows:

Crowe spinned around and pulled his gun and start [sic] firing at me. And I was backing up, but I clipped [sic] over the curb that was behind my foot and I fell. I pulled—he start [sic] shooting at me, then I pulled the gun out and start shooting back. I was trying to get up. I was trying to get up and pushed myself up. I was firing back, and by the time I got up, he was still firing. By the time I got up, I ran.

According to appellant, Crowe, while down on one knee, shot at him about two or three times, and he shot at Crowe five times with a .357 revolver. Appellant said that he did not know at the time whether any of his shots hit Crowe, but he learned later that Crowe had been shot. He testified that he ran to his grandmother's house, and he heard more shots, but he did not know who fired them. Appellant's grandmother testified that appellant ran into the house that night crying and that he thought he had been shot, although he had not. Subsequently, appellant left the District. The defense called a police detective who testified that both Michelle and Charles Anderson told him that Crowe fired his weapon, but he did not hit appellant.

## II. *Challenges to Jury Instructions*

Appellant argues that the trial court's instructions in response to two notes from the jury misstated the law and improperly shifted the burden of proof on self-defense. Specifically, appellant refers to the court's response to the jury's questions, sent during deliberations, concerning whether self-defense was considered a mitigating circumstance and the definitions of "specific intent" and "conscious disregard." He contends that the combined effect of the court's responses confused the jury, diluted the intent requirement for murder and manslaughter and shifted the burden of proof from the government to the defense. The government argues that the trial court did not plainly err in re-instructing the jury.

## A. *Standard of Review*

■ We consider preliminarily the government's claim that the plain error standard applies. "No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." Super. Ct.Crim. R. 30. Such objections "must be specific enough to direct the judges' attention to the correct rule of law; a party's request for jury instructions must be made with sufficient precision to indicate distinctly the party's thesis." *Russell v. United States*, 698 A.2d 1007, 1012 (D.C.1997). The purpose of the rule is to allow the other side to respond and the trial court to correct the error and thereby avoid jettisoning the trial. *Hunter v. United States*, 606 A.2d 139, 144 (D.C.), *cert. denied*, 506 U.S. 991, 113 S.Ct. 509, 121 L.Ed.2d 444 (1992). When a party fails to raise a timely objection to an instruction, we will review that claim of error under the plain error standard. *See Wilson v. United States*, 785 A.2d 321, 326 (D.C.2001). Appellant concedes that the plain error review is appropriate for his challenge to the "conscious disregard" portion of the instruction. However, he contends that he adequately preserved his objections to the trial court's re-instruction on specific intent and self-defense which he challenges in this appeal. We consider first whether appellant preserved these challenges.

■ First, appellant argues that he objected adequately to that portion of the court's definition of specific intent which stated, "specific intent means the defendant knew he was acting wrongfully or was disregarding the law when he fired the shots at Leander Crowe." The government contends that although defense counsel initially raised concerns about the definition of specific intent in relation to his self-defense claim, the issues he raised were addressed in the final instruction given, to which appellant did not object. The record supports the government's position. When the trial court proposed an instruction to respond to the jury's question, it explained that the old pattern jury instruction for intent (CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA (3d ed. 1978) (1978 Redbook)), was no longer suggested, and therefore, it had taken language from *DiGiovanni v. United States*, 580 A.2d 123, 126 (D.C.1990) and *United States v. Haldeman*, 181 U.S.App. D.C. 254, 337, 559 F.2d 31, 114 n. 226 (1976) (en banc).[8] The government expressed concern that the jury not be led to believe that the accused had to understand the elements of the statutory offense in order to be found guilty. Defense counsel stated that she was not familiar with these particular cases, but she understood the discussion.

Defense counsel stated that her concern with the court's proposed instruction was that by placing only at the end of the instruction, rather than after each concept given, reference to the government's burden to prove beyond a reasonable doubt

---

**8.** In *DiGiovanni*, in explaining specific intent, the trial court stated that a person who knowingly does an act which the law forbids, "intending to disobey or in conscious disregard of the law," may be found to act with specific intent. *DiGiovanni, supra,* 580 A.2d at 126. The trial court referred to the portion of *Haldeman* that is referenced in a note in a later edition of the Redbook, which states:

"the *Haldeman* court observed the accused need not 'have known he was violating a specific statute, but only [have known] he was acting wrongly or violating the law in general when he acted.'" CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 3.01 (4th ed. 1993) (citing *Haldeman, supra,* 559 F.2d at 114 n. 226).

that defendant did not act in self-defense, the jury might associate self-defense only with a part of the definitions included in the re-instruction.[9] The court and counsel discussed several alternatives for addressing this issue, and ultimately, defense counsel stated her preference for the formulation ultimately given by the court. The government objected on the grounds that explaining self-defense was not responsive to the jury's questions. Defense counsel, arguing in favor of the instruction, stated, "... it is just reminding [the jury] that self-defense is part of what they have to consider in terms of whether or not there was a specific intent to kill or injure ... with conscious disregard." Defense counsel, apparently satisfied that all of her concerns had been addressed, made no objection to the instruction finally formulated before or after it was given. Thus, a review of all of the circumstances discloses no defense challenge to the final re-instruction related to any error in the specific intent instruction that is asserted on appeal. Therefore, our review of this issue must be for plain error. *See United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

▮ Appellant also argues that he preserved the challenge to the trial court's belated addition to the self-defense instruction. He contends that: (1) his objection, without elaboration, was adequate under the circumstances; and (2) the basis for the objection was apparent. Specifically, he contends that after the court decided upon a response to the jury's note in light of lengthy discussions with counsel, the stand-in judge acceded to the prosecutor's last-minute request, as the jury was being called into the courtroom. It was then that the court added to the instruction the language challenged on appeal to the effect that "[i]f the defendant *honestly and reasonably believes that he is acting in self-defense,* self defense is a defense to both second-degree murder and voluntary manslaughter." (Emphasis added.) Under the circumstances, appellant contends, he could do no more than he did, *i.e.,* stating that "without expanding further I will disagree and object to that." However, he contends that, in light of defense counsel's focus during the discussions the previous day, the objection he raised was necessarily related to his burden shifting argument.

"[O]bjections to jury instructions must be specific enough to direct the judge's attention to the correct rule of law; a party's request for jury instructions must be made with sufficient precision to indicate distinctly the party's thesis." *Russell, supra,* 698 A.2d at 1012 (citing *Hasty v. United States,* 669 A.2d 127, 134 (D.C. 1995)) (other citation omitted). Where no objection is made to an instruction, we review for plain error. *Hasty,* 669 A.2d at

---

9. Appellant argues that the trial court, while addressing his concern about the need to repeat the self-defense option, failed to address a second part of his objection that the language told the jury that it could find specific intent if appellant merely knew that he was acting wrongfully. However, the discussion on this language was focused on appellant's concern that specific intent and conscious disregard had to be parsed in such a way as to associate the self-defense instruction with all definitions. The discussion arose in connection with the language in the trial court's original version of the proposed instruction in which the first paragraph stated, "[s]pecific intent requires more than a mere general intent to engage in certain conduct or to do certain acts. A person who knowingly does an act which the law forbids, intending with bad purpose either to disobey or disregard the law, may be found to act with specific intent." The court struck the paragraph in the original draft and gave an instruction crafted, taking into consideration appellant's concerns, without any objection to the final instruction. Thus, on this record, we find no objection preserving appellant's argument.

134 (citing *Foreman v. United States*, 633 A.2d 792, 795 (D.C.1993)). While it was apparent that the defense's general objection was to the additional language, he concedes that he did not specify the reasons for the objection. Appellant suggests that he was constrained not to explain further because the jury was entering the courtroom; however, this is not a case where the trial court precluded appellant from stating briefly the basis for his objection or from approaching the bench to explain it. Appellant made no request to do so. Therefore, this point of his argument for not specifying his thesis for the objection is not persuasive.

◼ Appellant's second point, *i.e.*, that the basis for the objection was apparent in light of prior discussions, is equally unpersuasive. He contends that the defense's focus the previous day about reiterating the government's burden of proof on self-defense should have alerted the judge that the objection to the additional language was related to the burden of proof. He claims that it is inconceivable that any argument could have been intended other than dilution or shifting of the burden to the defense. Aside from the fact that a stand-in judge had not been present during the discussions the previous day, the record does not support appellant's claim that this basis for his objection to the challenged portion of the instruction was apparent from the earlier discussions.[10] The previous day, among other issues, defense counsel focused upon reminding the jury, in connection with the definitions of specific intent and conscious disregard, that they also had to consider whether the government had proved that appellant did not act in self-defense. There was no separate discussion on "burden shifting." Appellant does not contend, nor could he on

this record, that the discussion with the stand-in judge before the challenged portion was added shed any light on the argument he now makes on appeal. Therefore, the trial court had no opportunity to address the point and take corrective action. The requirement that a party alert the court to the basis for his objection in order to preserve it is intended to prevent this situation. *See Perkins v. United States*, 760 A.2d 604, 609 (D.C.2000) (citing *Hunter, supra*, 606 A.2d at 144).

Having concluded that appellant's arguments concerning the trial court's reinstructions on specific intent and self-defense were not adequately preserved for review, and appellant, having conceded that his challenge to the court's re-instruction on conscious disregard was not preserved, we review each of these claims for plain error. *Olano, supra*, 507 U.S. at 734, 113 S.Ct. 1770. This is a formidable hurdle. Under the "plain error" standard, appellant must show not only that the error was plain or obvious, but also that the error affected substantial rights and resulted in a clear miscarriage of justice. *Id.*; *Wilson, supra*, 785 A.2d at 326. Applying that standard, we review each of appellant's challenges to the jury instructions.

### B. *Jury Notes and Instructions*

A clear understanding of appellant's arguments requires that we outline in some detail the relevant jury notes, the court's responses and the discussions concerning them, to the extent that we have not already done so. On the third day of deliberations, the jury sent a note to the court with the following questions: "What is the definition/clarification of specific intent? What is the definition of conscious disregard? Does specific intent go along with

---

10. The stand-in judge consulted with the trial judge, who could not be available, and agreed upon a response which the stand-in judge discussed with the parties.

seriously injure/serious bodily injury[?]" [11] During discussions concerning the note between the court and counsel, defense counsel expressed particular concern that: (1) the concepts of conscious disregard and specific intent be set out separately; and (2) the government had to prove that he did not act in self-defense, which is within the law. The court suggested three options for incorporating self-defense into the instruction, and it gave ultimately the option preferred by the defense. The court's response to the jury note was as follows:

> With respect to the instructions on page 2.3A–7, voluntary manslaughter while armed, specific intent means the defendant knew he was acting wrongfully or was disregarding the law when he fired shots at Leander Crowe.[12] In other words, he acted with the specific intent to kill or seriously injure the decedent. The government must prove beyond a reasonable doubt that the defendant, one, had the specific intent to kill or the specific intent to seriously injure the decedent; or two, the defendant acted in conscious disregard of extreme risk of death or serious bodily injury to the decedent; and three, the defendant did not act in self-defense as I have otherwise instructed you.

> Conscious disregard means the defendant knowingly engaged in acts that ignored the danger of such acts that a reasonable person would know could cause death or serious bodily harm.

> The jury should consider these instructions with all other instructions that I have given you.

After being re-instructed, the jury resumed deliberations which continued for the remainder of that day and until the afternoon of the next day, when the jury sent another note. This note inquired: "Is 'self-defense' considered a 'mitigating circumstance'? We seem to have a conflict of directions under 'mitigating circumstances' and yesterday's additional directions in reference to voluntary manslaughter." Since the trial judge was unavailable due to medical reasons, Judge Judith Retchin took the note. During discussions concerning possible responses to the note, the prosecutor raised the possibility that the jury was confusing self-defense with imperfect self-defense.[13] Defense counsel re-

---

**11.** These terms appeared in the trial court's instructions to the jury prior to deliberations. For the crime of first-degree murder, the court instructed: "First degree premeditated murder while armed is the killing of another person *with the specific intent to kill that person* with premeditation and deliberation, and without self-defense or mitigation." While defining the elements of first-degree premeditated murder, the trial court explained: *"Specific intent to kill means purpose or conscious intention to cause death."* (Emphasis added.) The trial court instructed the jury that the essential elements of the crime of second-degree murder are:

> [O]ne, that the defendant caused the death of the decedent; two, that at the time the defendant did so he *had the specific intent to kill or seriously injure the decedent, or acted in conscious disregard of an extreme risk of death or serious bodily injury to the*

decedent; three, there were no mitigating circumstances; four, the defendant did not act in self defense; and five, that at the time of the offense the defendant was armed with a pistol.
(Emphasis added.)

**12.** The trial court provided the jury with a written copy of the court's instructions for use during deliberations, and the referenced page number in this quotation apparently refers to those written instructions.

**13.** Imperfect self-defense is a mitigation defense which, unlike perfect self-defense, does not result in full exoneration. *See generally State v. Faulkner,* 301 Md. 482, 483 A.2d 759, 769 (1984). In explaining the difference between the elements of perfect and imperfect self-defense, the *Faulkner* court stated:

> Perfect self-defense requires not only that the killer subjectively believed that his ac-

sponded that he wanted to avoid highlighting imperfect self-defense or speculating about the jury's reason for the question. Judge Retchin stated that she would read the entire instruction on mitigating circumstances in response to this note. Just before the court instructed the jury, the prosecutor suggested additional language, as set forth below in the margin.[14] The court then instructed the jury as follows:

> [I]n response to your note, I want to tell you that self-defense is not considered a mitigating circumstance as that term was defined for you yesterday. Mitigating circumstances are found in the instructions that [the court] gave you at page 2.386. And I just want to review that with you.
>
> It says, 'Mitigating circumstances exist where a person acts in the heat of passion caused by adequate provocation. And heat of passion includes rage, resentment, anger, terror and fear. A person acts upon adequate provocation if his action is provoked by conduct that would cause an ordinary, reasonable person, in the heat of the moment, to lose his self-control and act on impulse and without reflection. An act of violence or an immediate threat of violence may be adequate provocation, but a slight is not adequate provocation. Mere words, no matter how offensive, are not adequate provocation.
>
> Mitigating circumstances also exist where a person honestly, but unreasonably, believes that he is acting in self-defense. This may occur when he honestly, but unreasonably, believes that he is in danger of serious bodily injury, or when he honestly, but unreasonably believes that the force he uses is necessary to defend himself.
>
> Mitigating circumstances determine the level of homicide. For second degree murder while armed the government must prove beyond a reasonable doubt that there were no mitigating circumstances, whereas for voluntary manslaughter while armed, that is a killing that would otherwise be second degree murder while armed, except that there are mitigating circumstances present.
>
> Mitigating circumstances do not result in a verdict of not guilty, but mitigating circumstances reduce the level of guilt from second degree murder while armed to voluntary manslaughter while armed. Mitigating circumstances are not a defense to the charge of manslaughter while armed.

tions were necessary for his safety, but, objectively, that a reasonable man would so consider them. Imperfect self-defense, however, requires no more than a subjective honest belief on the part of the killer that his actions were necessary for his safety, even though, on an objective appraisal by a reasonable man, they would not be found to be so. *Id.* (citation and internal quotation marks omitted). *See also* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.18 (4th ed. 2002).

14. The prosecutor's request and the court's decision occurred as follows:

> Prosecutor: Your Honor, ... I actually thought that the Court's suggestion in terms of laying it out and spelling out the difference between perfect and imperfect self-defense was more responsive, but I can understand the defense objecting to that .... But if we could at least distinguish those by stating at the beginning of the very last sentence, *If the defendant honestly and reasonably believes that he is acting in self-defense, self-defense is a defense to both second degree and voluntary manslaughter.* And then that makes clear what the difference is.
> The Court: I will do that.
> Defense: Your Honor, without expanding further ... I will just say that I will disagree and object to that.
> The Court: It's noted.
> (Emphasis added.)

*If Mr. Williams honestly and reasonably believed that he was acting in self-defense, then self-defense is a defense to both second degree murder and voluntary manslaughter while armed. (Emphasis added.)* [15]

## C. Analysis

 In reviewing claims of instructional errors, we consider the instructions as a whole. *Hunt v. United States,* 729 A.2d 322, 325 (D.C.1999) (citations omitted). Further, "it is axiomatic that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Dickerson v. United States,* 620 A.2d 270, 273 (D.C.1993) (citations and internal quotations omitted). Against that general standard, we consider each of appellant's claims of instructional error.

### 1. Specific Intent Instruction

 Appellant argues that by instructing the jury that "specific intent means the defendant knew he was acting wrongfully or was disregarding the law when he fired the shots at Leander Crowe," the trial court misstated the law and created the possibility that the jury would convict him of second-degree murder or voluntary manslaughter on the theory that he knew it was wrong to shoot someone. He contends that the instruction erroneously: (1) permitted the jury to reject his self-defense claim if it found that he knew he was acting wrongfully when he shot Crowe, regardless of the reasonableness of his belief that he was in imminent danger of bodily harm; and (2) placed upon him the burden of proving that he acted in self-defense. He contends that this instruction negated the court's proper instruction that "[s]pecific intent to kill means purpose or conscious intention to cause death." The government argues in response that the instruction, considered as a whole, properly defined specific intent and correctly restated the government's burden of proof. It also contends that the specific intent instruction was unduly favorable to appellant because manslaughter does not require proof of specific intent. Further, the government contends that even if error, it was not plain error.

We conclude that the court did not plainly err in giving the instruction. "'Plain' is synonymous with 'clear' or, equivalently, 'obvious.'" *Olano, supra,* 507 U.S. at 734, 113 S.Ct. 1770; *see also Baxter v. United States,* 640 A.2d 714, 717 (D.C.1994). This means that the error must be clear under settled law either at the time of trial or on appeal. *See Olano,* 507 U.S. at 734, 113 S.Ct. 1770; *see also Baxter,* 640 A.2d at 717 (citations omitted). The portion of the definition for specific intent that appellant challenges is consistent with a definition found in the 1978 version of the CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA (3d ed. 1978) (1978 Redbook).[16] In subsequent editions of the Redbook, the Criminal Jury Instructions Committee recommended avoiding the standard definition for specific intent in favor of instructions defining the requisite mental state required for the charged

---

15. The highlighted phrase in the last paragraph is the portion added at the request of the prosecutor just after the trial court asked that the jury be brought in for the instruction.

16. The 1978 Redbook provided a standard instruction which sought to distinguish between general intent and specific intent, stat-ing that "specific intent requires more than a mere general intent to engage in certain conduct or do certain acts. A person who knowingly does what the law forbids, intending with purpose or bad intent to disobey the law, may be found to act with specific intent." *Id.,* No. 3.01.

offense.[17] *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, 3.01 (4th ed. 1993); *see also* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 3.01 (4th ed. 2002). While the 1978 Redbook instruction was still the standard instruction, this court sanctioned the use of either the standard instruction on specific intent from the 1978 Redbook or, a substitution of the statutory language for the offense, where the requisite intent is set out therein. *See DiGiovanni, supra,* 580 A.2d at 126 (citing *Marcinski v. United States,* 479 A.2d 856, 861–62 (D.C.1984), *cert. denied,* 469 U.S. 1224, 105 S.Ct. 1216, 84 L.Ed.2d 357 (1985)). The standard language from the 1978 Redbook to which the court referred in *DiGiovanni* defined specific intent in terms of "knowingly do[ing] an act which the law forbids, intending with bad purpose either to disobey or disregard the law." *Id.* (citation omitted). The trial court in *DiGiovanni* had substituted "intending to disobey or in conscious disregard of the law," for the last phrase of the previous quote, and, considering the instructions as a whole, this court found that the jury had been adequately instructed on specific intent where the court also included with that specific intent instruction, the

statutory language for specific intent for the charged offense.[18] *Id.*

In the present case, in re-instructing the jury, the trial court used similar phraseology, stating "[w]ith respect to the instructions ..., voluntary manslaughter while armed, *specific intent means the defendant knew he was acting wrongfully or was disregarding the law when he fired shots at Leander Crowe.*" In spite of the admonition in later versions of the Redbook for this formulation, since this court found the 1978 Redbook instruction and similar language acceptable in *DiGiovanni,* it can not be said that the instruction as given was clearly contrary to settled law; therefore, it cannot constitute plain error. *See Baxter,* 640 A.2d at 717 (citations omitted).

Moreover, there is no likelihood, as appellant argues, that the instruction would "dilute[ ] the government's burden on an essential element of the offenses and ... create[ ] the possibility that the jury would convict [appellant] of second-degree murder or voluntary manslaughter on the theory that he knew it was 'wrong' to shoot someone," when viewing the instructions as a whole. *See Hunt, supra,* 729 A.2d at 325 (citations omitted) (In determining whether prejudicial error occurred, jury

---

17. The Committee opted instead for an instruction "defining the precise mental state applicable to the offense charged, as an element of the offense requiring proof beyond a reasonable doubt." CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 3.01 (4th ed. 1993) (Intent–Note). In making that recommendation, the Committee noted that a number of federal circuits had recommended this option, following the Seventh Circuit's advice in *United States v. Arambasich,* 597 F.2d 609, 613 (7th Cir.1979). The Committee also cited the Supreme Court's opinion in *Liparota v. United States,* 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) in which the Court observed that the standard specific intent instruction "has been criticized as too general and potentially misleading" and suggested that "[a] more useful instruction might relate

specifically to the mental state required under [the applicable statute] and eschew use of difficult legal concepts like 'specific intent' and 'general intent.' " *Id.* at 433 n. 16, 105 S.Ct. 2084. Thus, later versions of the Redbook include with the elements of each offense, a definition of the requisite intent as an element of the crime.

18. The additional instruction stated, consistent with the statute for receiving stolen property, "that the government was required to prove appellant had the specific 'intent to deprive another of the right to the property or the benefit of the property.' " *DiGiovanni, supra,* 580 A.2d at 126 (quoting D.C.Code § 22–3832).

instructions must be considered as a whole). After giving the challenged language, the court added immediately the following correct statement of the law:

> [i]n other words, he acted with the specific intent to kill or seriously injure the decedent. The government must prove beyond a reasonable doubt that the defendant, one, had the specific intent to kill or the specific intent to seriously injure the decedent; or two, the defendant acted in conscious disregard of extreme risk of death or serious bodily injury to the decedent; and three, the defendant did not act in self-defense as I have otherwise instructed you.

Thus, the instructions again informed the jury that the government had the burden of proving that appellant had either the specific intention to kill or the specific intention to injure the decedent or that he was "consciously disregarding the extreme risk of death or serious bodily injury to the decedent."

We also reject appellant's arguments that the instruction permitted the jury to reject his self-defense claim upon a finding that he knew it was wrong to shoot someone and placed upon him the burden of proving his self-defense claim. Although the jury note had not inquired directly about self-defense, at appellant's request, the re-instruction correctly stated that the government had the burden of proving beyond a reasonable doubt that defendant did not act in self-defense as previously instructed. In the court's initial instructions, which the jury had in writing in the jury room during deliberations, the trial court explained clearly that it was the government's burden to prove beyond a reasonable doubt that defendant did not act in self-defense. Therefore, on this record, we find no plain error in the court's re-instruction on specific intent.

2. *Conscious Disregard Instruction*

 Appellant argues that, in responding to the jury's note, the trial court erred in defining "conscious disregard" as meaning that "the defendant knowingly engaged in acts that ignored the danger of such acts that a reasonable person would know could cause death or serious bodily harm." He contends that this definition confused the alternative intent levels for second-degree murder and manslaughter with the less stringent intent requirement for involuntary manslaughter. He argues that the instruction, therefore, detracted from the seriousness of voluntary manslaughter, which might have led the jury to compromise for conviction instead of acquitting him of this offense. The government responds that the instruction could be read reasonably as informing the jury "of the subjective requirement that appellant knowingly engaged in acts that ignored the danger of such acts." It contends that any "ambiguity" in the re-instruction is not plain error because the original instruction for the term was correct, and there is no evidentiary support for any claim by appellant that he did not know that firing gunshots at a person created an extreme risk of his death or serious bodily injury. Appellant concedes that, having interposed no objection, this challenge is subject to review for plain error. *See Wilson, supra,* 785 A.2d at 326 (citation omitted). (To establish plain error, the error must be plain, affect substantial rights resulting in a miscarriage of justice or affecting the fairness, integrity of the proceeding). Against the plain error standard, appellant's challenge fails.

 As appellant points out, the trial court's definition of "conscious disregard" appears to set forth an objective standard for intent for voluntary manslaughter, by injecting the familiar "reasonable man" standard. For second-de-

gree murder and manslaughter, where the element of malice is based on "a wanton and willful disregard of an unreasonable human risk," the accused's knowledge of the risk is to be judged under a subjective standard. *See Comber v. United States,* 584 A.2d 26, 39 & n. 12 (D.C.1990). "[S]uch depraved heart malice[19] exists only where the perpetrator was subjectively aware that his or her conduct created an extreme risk of death or serious bodily injury, but engaged in that conduct nonetheless." *Id.* at 39 & n. 12. We observed in *Comber* that, "[i]n terms of the actor's awareness of the risk to life, if he is aware of the risk, the crime is murder and not involuntary manslaughter. If he is not aware ... and he should have been aware, the crime is involuntary manslaughter." *Id.* (quoting *United States v. Bradford,* 344 A.2d 208, 215 n. 22 (D.C.1975)). Thus, *Comber* and *Bradford* indicate that for second-degree murder or voluntary manslaughter, the defendant must be subjectively aware of the risk that would create a danger of death or serious bodily injury. Therefore, insofar as the court's re-instruction employed an objective standard in defining "conscious disregard" for voluntary manslaughter, it was erroneous.

■ That does not end our inquiry, however, under the plain error standard. This standard is extremely high. "Under the plain error standard ... [a defendant] not only must establish 'error,' but also that the error is 'plain' and 'affects substantial rights.'" *Wilson, supra,* 785 A.2d at 326 (citing *Olano, supra,* 507 U.S. at 732, 113 S.Ct. 1770). "If he satisfies these three hurdles, he must then show either a 'miscarriage of justice,' that is, actual inno-

cence; or that the trial court's error 'seriously affected the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (citing *Olano,* 507 U.S. at 736, 113 S.Ct. 1770). Applying that standard, we consider appellant's claim.

■ The element of malice required to prove second-degree murder and manslaughter may be established by showing that the accused had: (1) a specific intent to kill, (2) a specific intent to inflict serious bodily injury, or (3) "acted in conscious disregard of an extreme risk of death or serious bodily injury to the decedent." *See Comber, supra,* 584 A.2d at 38–39 (citations omitted); CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, Nos. 4.18 B & C (4th ed. 2002). The trial court so instructed the jury in this case in its original charge. However, the jury sent a note requesting a definition for "conscious disregard." When a jury expresses confusion or a lack of understanding of the terms used to explain the elements of an offense, the court should respond with "concrete accuracy" to clear up any confusion or lack of understanding. *See Alcindore v. United States,* 818 A.2d 152, 155 (D.C.2003) (quoting *Whitaker v. United States,* 617 A.2d 499, 501 (D.C.1992)) (other citations omitted). An erroneous response does not satisfy this requirement. Therefore, an erroneous response may affect the accused's substantial rights. *See Wilson, supra,* 785 A.2d at 328.

However, assuming that appellant's substantial rights were affected by the court's erroneous instruction, in this case, he can not show, as he must, either a miscarriage of justice (*i.e.,* actual innocence) or that the trial court's error "seriously affected the

---

19. Though the "malice" terminology is not used here, conscious disregard is conceptually identical to the depraved heart malice, which required a showing that there was "such a wanton and willful disregard of an

unreasonable human risk as to constitute malice aforethought even if there is not actual intent to kill or injure." *Comber, supra,* 584 A.2d at 39.

fairness, integrity or public reputation of the proceedings." *Wilson, supra,* 785 A.2d at 328 (quoting *Olano, supra,* 507 U.S. at 736, 113 S.Ct. 1770). It is inconceivable that a jury voting to convict appellant of voluntary manslaughter would have voted to acquit him of that offense if informed of a more stringent intent requirement than the one given in response to the jury's note.[20] Moreover, even if properly instructed, it is highly unlikely that the jury would have found on the evidence presented that appellant was not subjectively aware that shooting Crowe in the chest created a high risk that Crowe would die or sustain serious bodily injury. *Id.* There was no evidence to that effect, and indeed, the evidence was to the contrary. According to appellant's own testimony, he shot at Crowe five times with a .357 revolver. Even if appellant had asserted that he did not intend to kill or injure Crowe or that he was not aware of the extreme risk of death or serious bodily injury to the victim, his conduct was of such a nature as to reflect a subjective awareness of the extreme risk of death or serious injury. *See Johnson v. United States,* 631 A.2d 871, 876 (D.C.1993).[21] Under these circumstances, declining to reverse based on the court's conscious disregard re-instruction would not constitute a "miscarriage of justice" nor "seriously affect[ ] the fairness,

integrity or public reputation of judicial proceedings." *Olano, supra,* 507 U.S. at 732, 736, 113 S.Ct. 1770.

### 3. Self–Defense Instruction

■ Appellant argues that the trial court erred in re-instructing the jury on self-defense in response to the jury's note. He contends that the instruction, which stated "[i]f [he] honestly and reasonably believed that he was acting in self-defense, then self-defense is a defense to both second-degree murder and voluntary manslaughter while armed," was erroneous and impermissibly shifted the burden of proof. Appellant argues that, contrary to this instruction, a claim of pure self-defense does not require that the defendant act "honestly and reasonably," but rather that he "actually believes he is in imminent danger of bodily harm" and "has reasonable grounds for that belief." *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 5.12 (4th ed. 2002). Again, the government responds that, considering the instruction as a whole, there was no error in the court's response and nothing to suggest that appellant had the burden of proof on the issue of self-defense.

The challenged portion of the court's re-instruction on self-defense deviates from the Redbook instruction. The Redbook

---

**20.** We reject appellant's speculative claim that jurors might have compromised on the verdict because the instruction "made second-degree murder seem like a much less serious crime than it actually is."

**21.** In *Johnson,* the appellant sought to withdraw a guilty plea to voluntary manslaughter. *Johnson, supra,* 631 A.2d at 872. Among her claims were that she did not intend to kill or injure the infant victim nor was she *subjectively* aware of the extreme risk to which she subjected the child. *Id.* at 876. As to this argument, this court held that:

> her conduct in shaking a nine-month-old infant while aware that the child's head was

repeatedly hitting the wall involved such a wanton and willful disregard of an unreasonable human risk constituting malice, even if there were not an actual intent to kill or injure the infant, and that appellant's knowledge that the infant's head hit the wall "about four times," reflects both the wantonness of her actions and the subjective awareness of the extreme risk of death or serious injury to the infant.

*Id.* Similarly, in this case, appellant's actions were of such a nature as to reflect a subjective awareness of the extreme risk of death or serious injury to the victim.

states the proposition as "whether the defendant, under the circumstances as they appeared to him/her at the time of the incident, *actually* believed s/he was in imminent danger of bodily harm, and could *reasonably hold that belief*." *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 5.12 (4th ed. 2002). (Emphasis added.)

In support of his burden shifting argument, appellant contends that the challenged language in the re-instruction is almost identical to that which this court condemned in *Clark v. United States*, 593 A.2d 186, 194 (D.C.1991). In *Clark*, the trial court instructed the jury as follows:

> The defendant's theory of the case is that Helen Harrison pointed the gun at him and that it discharged accidentally as he tried to take the gun from her and deflect it from himself. *If you are satisfied that this is what happened*, you must find that the defendant is not responsible for the death of Helen Harrison.

*Id.* at 194 (emphasis in original). We held that the "italicized language was erroneous, for the prosecution had the burden of proving beyond a reasonable doubt that the killing was not accidental, whereas the judge implied in the improvised instruction that the defense had to satisfy the jury to the contrary." *Id.* (footnote omitted). Appellant's case is distinguishable from *Clark* because the trial court's instruction never stated or implied that the jury could reject appellant's self-defense claim if it found that he had not proved his theory of the case. Unlike the erroneous instruction in *Clark*, the statement, "[i]f Mr. Williams honestly and reasonably believed that he was acting in self-defense, then self-defense is a defense to both second-degree murder and voluntary manslaughter while armed," contains no language that its determination of self-defense is contingent upon appellant proving to the jury that he did act in self-defense.

■ Any claim of instructional error must be viewed "[not] in artificial isolation, but must be viewed in the context of the overall charge." *Dickerson, supra*, 620 A.2d at 273 (citation and internal quotations omitted). The trial court had informed the jury numerous times that the burden was on the government to prove that appellant did not act in self-defense. At the beginning of its charge, the trial court stated, "The burden is on the government to prove the defendant guilty beyond a reasonable doubt, and this burden of proof never shifts throughout the trial," and "[t]he law does not require defendant to prove his innocence or to produce any evidence." Moreover, the trial court made clear the government's burden in the context of the self-defense instruction. Specifically, the court stated:

> The defendant is not required to prove that he acted in self-defense. Where evidence of self-defense is present, the government must prove beyond a reasonable doubt that the defendant did not act in self-defense. If the government has failed to do so, you must find the defendant not guilty.

■ Therefore, even assuming error, appellant can not demonstrate that his substantial rights were affected. In the jury instruction context, substantial rights may be affected, for instance, where the evidence or verdict indicates that the jury was misled or confused. *Wilson, supra*, 785 A.2d at 328. Here, there is no indication that the jury was confused with regard to the burden of proof on self-defense. The jury sent no notes to the trial court to this effect. *See id.* (contrasting cases where the jury had sent notes indicating confusion). Moreover, appellant cannot demonstrate that the error here was so serious that it affected the fairness

or integrity of his trial. This court has noted that although a jury instruction is erroneous, fairness and integrity are not impacted where "reasonable jurors would conclude beyond a reasonable doubt" that the crime had been committed. *Id.* at 329. Here, there was sufficient evidence from which the jury could find that the government proved beyond a reasonable doubt that appellant did not act in self-defense. Therefore, the fairness and integrity of appellant's trial were not affected.[22]

### III. *Submission for First– and Second–Degree Murder to the Jury*

 Appellant argues that the trial court erred in instructing the jury on charges of first-and second-degree murder while armed because the evidence did not support these charges and inclusion of the instructions permitted the jury to reach a compromise on the lesser-included offense of manslaughter while armed. He contends that the trial court erred in denying his motion for judgment of acquittal on the murder count and that he is entitled to a new trial on the manslaughter count alone. The government responds that the evidence was sufficient to warrant denial of appellant's motion. The government also argues that appellant can show no prejudice because he was acquitted of the greater offenses, and his claim of jury compromise is speculative.

In reviewing a claim of denial of a motion for judgment of acquittal, this court applies the same standard as the trial court in determining whether the evidence was sufficient to support the conviction. *McCullough v. United States,* 827 A.2d 48, 57 (D.C.2003) (quoting *Curry v. United States,* 520 A.2d 255, 263 (D.C.1987)). Under that standard, we "view the evidence

in the light most favorable to the government, giving deference to the fact finder's right to weigh the evidence, determine the credibility of the witnesses, and draw inferences from the evidence presented." *Id.* at 57 (citation omitted). Only if there is no evidence upon which a reasonable mind can infer guilt beyond a reasonable doubt is reversal warranted. *Id.* (citation omitted). Applying this familiar standard, we conclude that the evidence was sufficient to support the trial court's ruling denying the motion.

 To establish the charge of first-degree murder, the government must prove beyond a reasonable doubt that: (1) the defendant caused the death of the decedent; (2) he did so with the specific intent to kill the decedent; (3) after premeditation; (4) he did so after deliberation; (5) there were no mitigating circumstances; and (6) he did not act in self-defense. *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.18 (4th ed. 1993); *see also* D.C.Code § 22–2401 (1996). There is no issue with respect to the first element, causation. With respect to the second element, specific intent, Michelle Anderson testified that she observed appellant approach Crowe, who had already been wounded, stand over him and shoot him several times in the chest, while saying to him that he was going to die. This testimony, if credited by the jury, was sufficient to permit the jury to conclude that appellant intended to cause Crowe's death. The third element, " '[p]remeditation,' means that the defendant formed the specific intent to kill the victim 'for some length of time, however short', before the murderous act.' " *Bates v. United States,* 834 A.2d 85, 93 (D.C.2003) (quoting *Austin v. United States,* 127 U.S.App. D.C. 180,

---

**22.** We are not persuaded that the combined effect of the court's instructional errors, if any, require reversal under the plain error standard essentially for the reasons expressed during discussion of appellant's separate challenges.

188, 382 F.2d 129, 137 (1967)). Both Michelle Anderson and Charles Anderson testified that appellant walked over to Crowe, stood over him, fired shots into his chest and told him that he was going to die. Although apparently of brief duration, appellant's approach to the victim, subsequent action and expressed intent to kill him is sufficient to show premeditation. *See id.* The fourth element, deliberation, which is separate from premeditation, requires that there was "the reflection and turning over in the mind of the accused concerning his existing design and purpose to kill." *Id.* (citation omitted). Again, no minimum time lapse is required. *Id.* at 94. According to the testimony of Michelle and Charles Anderson, the gunfire ceased temporarily, and thereafter, appellant walked over to Crowe, who was not shooting at appellant at the time, and fired the fatal shots. This evidence, viewed in the light most favorable to the government, was sufficient to support the premeditation element. Appellant's action in moving closer to his victim and the time that it took, although ever so brief, is sufficient for a reasonable juror to find that he considered and reflected upon his actions.

Appellant's primary argument is that the evidence was insufficient to submit the counts of first- and second-degree murder to the jury because mitigating circumstances are a defense to both charges, and the government failed to prove beyond a reasonable doubt that mitigating circumstances were absent.[23] It was, of course, the government's burden to prove that

there were no mitigating circumstances. *See Comber, supra,* 584 A.2d at 41 ("The absence of justification, excuse, or mitigation is thus an essential component of malice, and in turn of second-degree murder, on which the government bears the ultimate burden of persuasion"). Therefore, a defendant may argue that the government's failure to disprove these circumstances renders the evidence insufficient to support conviction of the charge. *See, e.g., Fisher v. United States,* 779 A.2d 348, 355 (D.C.2001), *cert. denied,* 534 U.S. 1095, 122 S.Ct. 844, 151 L.Ed.2d 722 (2002) (defendant argued that evidence was insufficient as the government failed to prove that he did not act in self-defense). However, viewed in the light most favorable to the government, the evidence was sufficient for a reasonable juror to find beyond a reasonable doubt the absence of mitigating circumstances.

As the trial court instructed,

[m]itigating circumstances exist where a person acts in the heat of passion caused by adequate provocation. And heat of passion includes rage, resentment, anger, terror and fear. A person acts upon adequate provocation if his action is provoked by conduct that would cause an ordinary, reasonable person, in the heat of the moment, to lose his self-control and act on impulse and without reflection. An act of violence may be adequate provocation, but a slight is not adequate provocation. Mere words, no

---

**23.** The government argues that appellant did not preserve this issue for review because he moved for judgment of acquittal only as to the charges of threats and AWIK w/a. However, while appellant only argued with respect to threats and AWIK w/a, defense counsel submitted on the other charges. The trial court ruled with respect thereto, "[a]nd a reasonable juror could find beyond a reasonable doubt as to the other offenses." Therefore,

we reject the government's challenge that the issue was not raised in the trial court. *See Newby v. United States,* 797 A.2d 1233, 1238 (D.C.2002) (noting that a general motion for acquittal "broadly stated, without specific grounds," is "sufficient to preserve the full range of challenges to the sufficiency of the evidence.") (citations and internal quotations omitted).

matter how offensive, are not adequate provocation.

See CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.18 (4th ed. 1993). See also Howard v. United States, 656 A.2d 1106, 1115 (D.C.1995) (providing similar language). Although there was evidence supportive of mitigation,[24] there was other evidence from which a reasonable mind might conclude beyond a reasonable doubt that there were no mitigating circumstances. Specifically, there was testimony from both Charles and Michelle Anderson that appellant pushed Crowe first and escalated the confrontation by pulling and firing his weapon. Even if the jury were to find that Crowe, by displaying or reaching for his gun, had placed appellant in reasonable fear of immediate danger, and thus adequately provoked his fear, the jury could have credited the testimony of Michelle Anderson that Crowe never shot at appellant, that appellant rendered Crowe helpless by the initial shot, and deliberately approached and stood over the kneeling and unarmed victim, and fired the fatal shots into his chest, while telling him, "You going to die." Thus, there was evidence from which the jury could find that the government had proved that there were no mitigating circumstances. Although appellant points to evidence from which an alternate conclusion can be reached, the standard is whether there is "no evidence upon which a reasonable mind could infer guilt beyond a reasonable doubt." McCullough, supra, 827 A.2d at 57 (citation omitted). Here, there was such evidence, and therefore, no reason for the court not to submit the charges to the jury.

■ The government argues that, in any event, appellant can show no prejudice resulting from the submission of the charges to the jury because he was acquitted of both first- and second-degree murder. The government cites in support of its argument Howard v. United States, 128 U.S.App.D.C. 336, 338, 389 F.2d 287, 289 (1967). Appellant argues that this court should follow the analysis of the Supreme Court in Price v. Georgia, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970) in assessing prejudice from submitting the greater charges to the jury. In Price, the Supreme Court held, on double jeopardy grounds, that a State could not retry an accused for murder after his conviction of the lesser-included offense of voluntary manslaughter had been set aside.[25] Id. at 326, 90 S.Ct. 1757. After petitioner's first conviction of the lesser-included offense of voluntary manslaughter was reversed by the Court of Appeals of Georgia, upon retrial, the jury was allowed to consider again the greater offense of murder, and again returned a verdict on the lesser-included offense. Id. 324–25, 90 S.Ct. 1757. The Supreme Court rejected the argument that because petitioner had been convicted of the same crime at the first and second trials, the second jeopardy was harmless error. Id. at 331, 90 S.Ct. 1757. In addition to the ordeal imposed by being subjected to a second trial for murder, the Supreme Court observed that "[p]erhaps of more importance, we cannot determine whether or not the murder charge against petitioner induced the jury to find him guilty of the less serious offense of voluntary manslaughter rather than to continue

---

24. There was evidence that before the shooting, Crowe was angry, had cursed at Ms. Anderson, and walked in appellant's direction with his fists "balled up."

25. Petitioner's second conviction, which he challenged on Double Jeopardy grounds, among others, was affirmed by the appellate court, and the Georgia Supreme Court denied certiorari. Price, supra, 398 U.S. at 326, 90 S.Ct. 1757.

to debate his innocence." *Id.* (citing *United States ex rel. Hetenyi v. Wilkins*, 348 F.2d 844 (2d Cir.1965), *cert. denied*, 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966)). Appellant contends that this case is not distinguishable in any meaningful way from *Price*, and that *Howard*, upon which the government relies, pre-dated *Price*, and is therefore, no longer good law.

Appellant's argument has no persuasive force because both *Price* and *Hetenyi* focused on the double jeopardy bar to retrial of a greater offense where the accused had previously been tried for the same, but convicted only of the lesser-included offense. *See Price*, 398 U.S. at 324, 90 S.Ct. 1757 ("We granted the writ to consider the power of a State to retry an accused for murder after an earlier guilty verdict on the lesser included offense of voluntary manslaughter had been set aside because of a trial error."); *Hetenyi*, 348 F.2d at 863 (noting that while "Hetenyi was indicted, prosecuted and charged with first degree murder ... the State was constitutionally forbidden to prosecute him for first degree murder following the completion of the first trial"). The analysis of these cases do not establish or even dis-

cuss any standard related to the submission of offenses and lesser-included offenses in a single trial. *See Price*, 398 U.S. at 332, 90 S.Ct. 1757.[26] Although the *Hetenyi* court did state in its prejudice analysis that "[t]he question is not whether the accused was actually prejudiced, but whether there is reasonable possibility that he was prejudiced," its explanation immediately thereafter indicates its focus on the circumstances presented where there are successive trials and issues of double jeopardy.[27] *See Hetenyi*, 348 F.2d at 864. Therefore, we are not persuaded that *Price* and *Hetenyi* apply here.

In contrast, in *Howard*, relied upon by the government, the issue raised was whether "the trial court erred in denying the motion for acquittal of murder in the first degree and submitting that issue to the jury on insufficient evidence of premeditation and deliberation." *Howard*, 128 U.S.App.D.C. at 342, 389 F.2d at 293. The *Howard* court determined that even if the first-degree murder charge was improperly submitted on insufficient evidence, the error was harmless, as the jury returned a verdict of guilty on second-degree murder. *Id.* The issue presented

---

**26.** The *Price* court's analysis of the jury instruction issue reads as follows:

> One further consideration remains. Because the petitioner was convicted of the same crime at both the first and second trials, and because he suffered no greater punishment on the subsequent conviction, Georgia submits that the second jeopardy was harmless error when judged by the criteria of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).
> We must reject this contention. The Double Jeopardy Clause, as we have noted, is cast in terms of the risk or hazard of trial and conviction, not of the ultimate legal consequences of the verdict. To be charged and to be subjected to a second trial for first-degree murder is an ordeal not to be viewed lightly. Further, and perhaps of

more importance, we cannot determine whether or not the murder charge against petitioner induced the jury to find him guilty of the less serious offense of voluntary manslaughter rather than to continue to debate his innocence. *See United States ex rel. Hetenyi v. Wilkins*, 348 F.2d 844 (C.A.2 1965), *cert. denied*, 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966).

*Price*, 398 U.S. at 331–32, 90 S.Ct. 1757 (footnote omitted).

**27.** The court stated: "[t]he ends of justice would not be served by requiring a factual determination that the accused was actually prejudiced in his third trial by being prosecuted for and charged with first degree murder, nor would the ends of justice be served by insisting upon a quantitative measurement of that prejudice." *See Hetenyi, supra*, 348 F.2d at 864.

in this case is like the issue presented in *Howard.* In *Howard,* the court rejected the argument that the jury might have compromised its views, because of the inclusion of the greater charges. 128 U.S.App. D.C. at 343, 389 F.2d at 294. Similarly, in this case, we find no basis to conclude that the mere submission of the greater charges resulted in confusion, unduly influenced the jury or led them to decide the case on other than the evidence and the law. Moreover, on the day that appellant's case was argued, this court rejected a similar argument in *Garcia v. United States,* 848 A.2d 600, 602 (D.C. 2004). In *Garcia,* this court held that "[u]nless genuine reason exists to think that [defendant] somehow suffered prejudice despite his acquittal of involuntary manslaughter, the erroneous submission to the jury of that offense is no reason to reverse his conviction of a properly submitted lesser included offense [of negligent homicide]." *Id.* (citations omitted). Like appellant here, Garcia also claimed that the presence of the greater charge for consideration would encourage jury compromise. *Id.* This court rejected the argument as speculative. *Id.* (citing *Cowan v. United States,* 547 A.2d 1011, 1016 (D.C. 1988) and *Howard, supra,* 128 U.S.App. D.C. at 343, 389 F.2d at 294). Accordingly, we agree with the government's argument that even if the greater charges were submitted erroneously to the jury, any error was harmless.

## IV. *Denial of Request to Recall Witness*

 Finally, appellant argues that the trial court abused its discretion in denying his request to reopen his case and recall a defense witness, Ruthie Randall, to provide evidence supporting his theory that bias infected the testimony of the government's eyewitnesses. His bias theory, as related to this argument, was that the testimony of Michelle Anderson and Charles Anderson was colored by fear of reprisal from the decedent's associates, a group known as the "Five Percenters." Defense counsel proffered that Ms. Randall's testimony would show that after the defense rested and the court had given its instructions, all of the windows in the store where she worked were broken out. Appellant contends that the defense could have used this evidence to show that, out of fear, the Andersons were either exaggerating or not being truthful about the circumstances surrounding the shooting.[28] Appellant also points to information relayed by Ms. Randall prior to her original testimony in which she informed the court that she had been warned by decedent's friends that if she testified, they would take care of her and that they "strongly advised her that it would not be in her best health interest to come to court."[29] The trial court ruled that the evidence proffered after the jury had been instructed was of limited relevance and more prejudicial than probative.

 Whether to permit a defendant to reopen a case after the close of the evidence is committed to the sound discretion of the trial court, and this court will reverse only for an abuse of discretion.

---

**28.** The defense had also sought to show at trial that the Andersons were biased against him because of their affection for the decedent. According to appellant, Michelle Anderson was biased on the theory that she was a former girlfriend of the decedent, and her brother, Charles, was like a brother to him.

**29.** The trial court ruled that the defense could elicit evidence that Ms. Randall feared boys in the neighborhood, but that it could not link that fear to individuals associated with the decedent.

*Davis v. United States,* 735 A.2d 467, 472 (D.C.1999) (citation omitted). "In exercising its discretion, the court must consider the timeliness of the motion, the character of the testimony [ ] and the effect of granting the motion." *King v. United States,* 550 A.2d 348, 354 (D.C.1988) (quoting *United States v. Thetford,* 676 F.2d 170, 182 (5th Cir.1982), *cert. denied,* 459 U.S. 1148, 103 S.Ct. 790, 74 L.Ed.2d 996 (1983)). It should consider also whether the proffered evidence is relevant, admissible and helpful to the jury in deciding the accused's guilt or innocence. *Id.* (citation omitted). Further, "[t]he belated receipt of such testimony should not imbue the evidence with distorted importance, prejudice the opposing party's case, or preclude an adversary from having an adequate opportunity to meet additional evidence offered." *Id.* (citations omitted). Considering these factors, we find no abuse of discretion in the trial court's ruling.

■ Bias of a witness may be established through cross-examination and by the introduction of extrinsic evidence. *Gibson v. United States,* 536 A.2d 78, 82 (D.C.1987). However, "the opportunity to use extrinsic evidence to explore a witness' bias is circumscribed by the rule of relevance and the discretion of the trial court to exclude evidence for a lack thereof." *Id.* (citing *McClain v. United States,* 460 A.2d 562, 569 (D.C.1983)). As the trial court observed in making its ruling, there was no evidence concerning who actually broke the window or the circumstances

involved. Absent a showing of some connection between the vandalism and decedent's associates, the jury could not infer reasonably that the decedent's associates were responsible for breaking the windows, and therefore a source of fear in the Andersons that colored their testimony at trial. Not only was the proffered incident not shown to be connected to the decedent, it occurred after the Andersons had testified. Therefore, the jury could not infer reasonably that the incident itself generated fear in the Andersons that caused them to be biased at the time they gave their testimony. That being the case, the evidence was irrelevant to the theory of bias advanced. *See Jones v. United States* 625 A.2d 281, 284 (D.C.1993) ("[E]vidence is relevant if it makes the existence of a contested fact that is of consequence to the determination of the action more or less probable than it would be without that evidence.") (citation omitted). Thus, the trial court did not abuse its discretion in excluding the evidence for lack of relevance.[30] *See Gibson,* 536 A.2d at 82.

For the foregoing reasons, the judgment appealed from hereby is

*Affirmed.*

---

**30.** There was already in the record evidence that decedent's associates were feared in the neighborhood. The jury heard evidence that Michelle Anderson was beaten at Crowe's funeral and that appellant left town because of his fear of Crowe's family and friends. Therefore, this is not a case where appellant was precluded from presenting this particular bias theory to the jury. *See Thomas v. United States,* 824 A.2d 26, 32 (D.C.2003). He was precluded only from providing irrelevant evidence which might confuse or mislead the jury.