Calvin COWAN, Appellant,

v.

UNITED STATES, Appellee.

No. 85–1707.

District of Columbia Court of Appeals.

Argued May 19, 1988.

Decided Sept. 30, 1988.

Ronald A. Goodbread, Washington, D.C., for appellant.

Glenn A. Fine, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty. at the time the brief was filed, and Michael W. Farrell and Raymond C. Hurley, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

---

Before FERREN, ROGERS, and STEADMAN, Associate Judges.

ROGERS, Associate Judge:

Appellant was charged with rape, D.C. Code § 22–2801 (1981), carnal knowledge, *id.*, indecent liberties with a minor child, *id.* § 22–3501(a), enticing a minor child, *id.* § 22–3501(b), and attempted rape. *Id.* §§ 22–103, –2801. He filed a pretrial motion to suppress four incriminating statements that he made to the police. The trial court suppressed only his first statement. On appeal he contends first, that his later statements, stemmed from his first statement and that the subsequent advice of his rights under *Miranda*[1] was insufficient to assure that he voluntarily waived those rights. He also contends second, that the jury's verdict was improperly influenced by the submission of the rape and carnal knowledge charges against him, and third, that he cannot be convicted of both attempted rape and taking indecent liberties when the charges arise out of a single incident. Because appellant has failed to demonstrate circumstances sufficient to overcome the presumption that he made a rational and intelligent choice to waive or invoke his rights, *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), we find no error by the trial court in refusing to suppress appellant's three later statements. Finding appellant's second contention unpersuasive because he has failed to demonstrate prejudice and that his third contention is meritless, we affirm.

I

The evidence at the suppression hearing showed that on December 29, 1984, Officers Stephen Loughman and Harry Weeks received a radio assignment for a woman screaming for help. Upon arriving at the scene, the officers heard a disturbance in the woman's apartment. They entered and discovered appellant and the woman involved in an altercation. The woman accused appellant of having raped her daughter, J.P. The police separated appellant and the woman, and Weeks asked appellant to accompany him outside while Officer Loughman spoke to the woman.

The woman told Loughman that she had gone across the street to visit a neighbor and had left J.P., who was then five years old, in the care of appellant. When she returned to her apartment, the door was locked. She looked through the living room window and saw appellant getting up from the bed in the bedroom with his pants down and her daughter lying on the bed with her pants down. Loughman also questioned J.P., who told him what happened.

Meanwhile Weeks was outside the apartment with appellant.[2] After ten to fourteen minutes, Officer Loughman asked Weeks and appellant to return to the apartment. When they were in the hallway of the building, Loughman told appellant that he was not under arrest, but that Loughman wanted to ask him some questions. Loughman advised appellant of his *Miranda* rights, and asked appellant if he understood these rights. Appellant answered that he did, and Loughman then asked appellant for his version of what had happened in the woman's absence. Appellant did not respond. Loughman repeated the question. Appellant attempted to run from the hallway, but was restrained by the officers. When Loughman repeated his question, appellant dropped his head and stated, "I fucked her." Weeks asked appellant what he had said, and appellant replied, "She was hot for me and I fucked her."

Weeks then handcuffed appellant and took him out to the police car where he placed appellant in the back seat. Weeks asked appellant where he lived and whether he worked or went to school. Appellant asked Weeks if he would have to go to jail. Weeks replied that appellant would certain-

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Weeks did not handcuff or hold appellant and did not formally place appellant under arrest.

Weeks testified that he did not speak to appellant while the two were outside the apartment other than to ask for his name, address, and date of birth.

ly have to spend that night in jail. Weeks asked appellant whether he had a girlfriend, and appellant again asked if he would have to go to jail. Weeks readvised appellant of his *Miranda* rights by reading from a P.D. 47 rights card.[3] Thereafter Weeks asked appellant what had happened and appellant made a second statement. He explained that the little girl had been running around with her underwear down and that he had developed an erection and had "fucked her." Appellant admitted that he knew what sexual intercourse was and said that he had had sexual intercourse with J.P.

Sergeant Lionel Millard, who was assigned to the sex offense branch, arrived at the woman's apartment while appellant was in the police car. Millard sat in the front seat of the police car and asked appellant if he understood why he had been arrested. Appellant replied that he did, and Millard readvised him of his *Miranda* rights. After stating that he understood what his rights were, appellant made a third statement, admitting that he had had sex with J.P. Millard testified that appellant was calm and relaxed when responding to questions.

Detective Joanne Hammett, who was also assigned to the sex offense branch, spoke to appellant when he was brought to the police station. Hammett readvised appellant of his rights by reading from a P.D. 47 rights card, and then gave the card to appellant and asked him to read the four questions on the back of the card and answer them.[4] Appellant answered yes to all of the questions on the card and then signed his name. Hammett asked appellant if he was willing to give a statement, and he agreed to do so. Hammett then took appellant's statement, typing her questions and then typing appellant's answers verbatim. Appellant was slow in speech, but he had no difficulty answering questions and appeared relaxed. After she had finished typing the statement, Hammett showed it to appellant and he signed his name at the bottom of each page. In his fourth statement appellant admitted to having had sex with J.P. and to placing his penis in her vagina.

Appellant testified that he had not told the police that he had molested J.P. and that the police had never advised him of his rights. In addition, appellant asserted that although his signature appeared on the statement typed by Detective Hammett, the pages had been blank when he signed them. He also claimed that nothing had been printed on the P.D. 47 rights card when he had signed it. Appellant admitted, however, that he knew he was entitled to an attorney and that he did not have to say anything without one. He also knew that he was going to be charged with a serious crime and that that was why he decided not to say anything unless it helped him.

The trial court credited the testimony of the police officers, and found that all of appellant's statements were voluntary, rejecting the argument that the statements had been coerced and finding that appellant had not been mistreated by the officers. The court ruled that appellant's first statement, which appellant had made to the police in the hallway, should be suppressed. In view of the evidence of appellant's bolting, being held and questioned again, the court found that even with a prior *Miranda* warning, the government had failed to carry its burden of proving that there

---

3. The warning in the P.D. 47 stated:
 You are under arrest. Before we ask you any questions, you must understand what your rights are. You have the right to remain silent. You are not required to say anything to us at any time or to answer any questions. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we question you and to have him with you during questioning. If you cannot afford a lawyer and want one, a lawyer will be provided for you. If you want to answer questions now without a lawyer present, you will still have the right to stop answering at any time until you talk to a lawyer.

4. The four questions on the P.D. 47 card are:
 1) Have you read or had read to you the warning as to your rights?
 2) Do you understand these rights?
 3) Do you wish to answer any questions?
 4) Are you willing to answer questions without an attorney present?

had been a knowing and intelligent waiver of appellant's right to remain silent. The court found that appellant's three later statements had been made after *Miranda* warnings had been properly given, and, relying on *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), ruled that these statements would not be suppressed.

At trial, J.P. testified that appellant had picked her up and taken her into the bedroom where he had pulled down her pants, taken off his clothes, and "put his thing on [her]." When the prosecutor asked her where appellant had put "his thing," J.P. pointed between her legs. She also stated that appellant had penetrated her vagina, but only a little bit. With the aid of dolls, J.P. showed the jury what part of the body appellant had inserted inside of her. She also said that she had not wanted to go with appellant into the room and had told him so.

The woman essentially repeated the testimony that she had given at the suppression hearing as did the officers, but omitted any reference to appellant's first statement. Millard identified the underwear that appellant was wearing when he was arrested, and an F.B.I. expert testified that he had found semen on the inside of the underwear. Hammett described how she had taken appellant's written statement, and it was admitted into evidence along with appellant's two prior oral statements.

In defense, appellant presented a gynecologist, who testified that he had examined J.P. on the night of the incident and he had not found any bruises in her vaginal area or evidence of trauma on her body. In the doctor's opinion there had been no penetration of the hymen, but he had no opinion as to whether the labia had been penetrated. Appellant's father testified that several weeks after the incident the woman had told him that she did not believe appellant had done anything to her daughter.

The jury found appellant guilty of taking indecent liberties with a minor child, enticing a minor child, and attempted rape, but acquitted him of rape and carnal knowledge.

## II.

In attacking the admission of his three inculpatory statements, appellant contends that he had not made a voluntary and intelligent waiver of his fifth amendment rights and that the three statements should be suppressed as the fruits of his first statement. We find no error by the trial court in ruling that the government met its burden of proof to show that appellant had voluntarily waived his rights before making his three statements during his custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed. 2d 694 (1966); *Rogers v. United States*, 483 A.2d 277, 283 (D.C.), *cert. denied,* 469 U.S. 1222, 105 S.Ct. 1223, 84 L.Ed.2d 363 (1984); *Bliss v. United States*, 445 A.2d 625, 630 (D.C.1982), *modified,* 452 A.2d 172 (D.C.), *cert. denied,* 459 U.S. 1117, 103 S.Ct. 756, 74 L.Ed.2d 972 (1983); *Wilkerson v. United States*, 432 A.2d 730, 734–35 (D.C.1981).

■■ Appellant was advised of his rights on four occasions, and was informed of his *Miranda* rights in every instance a very short time before he gave each of the three statements. *See Beasley v. United States*, 512 A.2d 1007 (D.C.1986). The trial court credited the testimony of the police officers who all stated that while appellant was in custody he was calm, alert, and able to comprehend his situation.[5] *See In re T.T.T.*, 365 A.2d 366, 368 (D.C.1976); *Cooper v. United States*, 363 A.2d 982, 984 (D.C.1976). At the police station, appellant read and signed the P.D. 47 rights card, acknowledging that he understood his rights and wished to make a statement. Moreover, the trial court flatly rejected any

---

5. The trial court's findings that appellant was not mentally slow, that he was literate, and that he was capable of answering the complicated questions posed by his counsel are amply supported by the evidence, and we are therefore unpersuaded by appellant's argument that his waiver was not truly voluntary because he was not fully aware of the gravity of the situation. *See also In re C.L.W.*, 467 A.2d 706, 709 (D.C. 1983) (valid waiver by juvenile with I.Q. of seventy-four and reading difficulties).

suggestion that appellant had been tricked, coerced, or compelled to give any of the statements.[6]

With respect to appellant's contention that his three statements were irremediably tainted by his first statement, *Oregon v. Elstad, supra,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 224 is dispositive. In that case, the Court held that the subsequent administration of *Miranda* warnings to a suspect who has given an uncoerced but unwarned statement will ordinarily suffice to remove the conditions that precluded admission of the earlier statement. *Elstad, supra,* 470 U.S. at 314, 105 S.Ct. at 1296. "[A]bsent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion." *Elstad, supra,* 470 U.S. at 314, 105 S.Ct. at 1296. In these circumstances, absent evidence that "the suspect's will to invoke his rights once they are read to him" has been undermined, a trial court may reasonably conclude that a suspect has made a rational and intelligent waiver of his *Miranda* rights. *Id.* at 314 & 317, 105 S.Ct. at 1296–97. Thus, if neither the initial nor the subsequent admission is coerced, there exists little justification for excluding the "highly probative evidence of a voluntary confession" from the factfinder's consideration. *Id.* at 312, 105 S.Ct. at 1294.

In the instant case, the trial court found that appellant's first statement had been voluntarily made. Thus, under *Elstad,* the subsequent, repeated administration of appellant's *Miranda* rights was sufficient to remove any taint from the initial, unwarned statement. *Elstad, supra,* 470 U.S. at 314, 105 S.Ct. at 1296. Appellant's attempt to distinguish *Elstad* is unconvinc-

ing, for, contrary to his assertions, the trial court did not find that appellant's first statement was the product of coercion or intimidation. Rather, the trial court suppressed the statement because the government had failed to establish that there had been a knowing and intelligent waiver of rights. We agree with that ruling, *see Miller v. Fenton,* 474 U.S. 104, 110, 106 S.Ct. 445, 450, 88 L.Ed.2d 405 (1985), and the findings on which the trial court reached its conclusion are supported by substantial evidence in the record. *See United States v. Alexander,* 428 A.2d 42, 49–50 (D.C.1981). While the Supreme Court declined to adopt a *per se* rule in *Elstad,*[7] appellant has failed to show police behavior that would warrant suppression of his three statements, especially in view of his own testimony at the suppression hearing about his understanding of the nature of his rights and his situation, notwithstanding the incriminating nature of his statements and the fact that the officers wanted him to make a statement.[8] Accordingly, we hold that the trial court properly admitted the three statements.

### III.

■ Appellant also contends that he was improperly charged with rape and carnal knowledge. He argues on appeal that although the jury acquitted him of rape and carnal knowledge, its deliberations were nonetheless infected and the trial court erred in denying his motion for a judgment of acquittal before the case was submitted to the jury.

"[T]he erroneous submission to the jury of an offense of which the accused is not convicted is not reversible unless there is prejudice." *Howard v. United States,* 128 U.S.App.D.C. 336, 342, 389 F.2d 287, 293

6. We likewise reject appellant's argument that he was read his rights on so many occasions that they became meaningless. *Cf. Cooper v. United States, supra,* 363 A.2d at 983–84.

7. *Elstad, supra,* 470 U.S. at 317, 105 S.Ct. at 1297; *see also id.* at 342 (Brennan, J., dissenting) (majority "eschew[s] a *per se* rule").

8. Even if the trial court had found that appellant's attempt to escape in the hallway before he

made his first statement evidenced a desire not to speak to the police, a doubtful proposition here, *see McClinnahan v. United States,* 454 A.2d 1340, 1346–47 (D.C.1982); *Bliss, supra,* 445 A.2d at 629–30, his rights were "scrupulously honored." *Michigan v. Mosely,* 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975); *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980); *Hawkins v. United States,* 461 A.2d 1025, 1029–30 (D.C.1983).

(1967). Appellant's contention that the submission of the rape charge to the jury so inflamed its deliberations and may have caused the jury to reach a compromise verdict, is adequately answered by the United States Court of Appeals for this circuit in *Howard, supra.* In that case, the defendant had been charged with both first and second degree murder; he was acquitted of first degree murder but convicted of murder in the second degree. *Id.* at 338, 389 F.2d at 289. The court held that, assuming that the charge of first degree murder had improperly been submitted to the jury, the defendant had suffered no prejudice since he was acquitted of first degree murder. The court stated:

> Appellant's second hypothesis of prejudice—that the instruction on first degree murder may have unduly influenced the verdict in the second degree—gives the jury far less credit than it deserves. We see, and appellant offers, no theory upon which to base a realistic conclusion that the jury might have compromised its views because of, or was misled by, the mere submission of the first degree charge for its consideration.

*Howard, supra,* 128 U.S.App.D.C. at 343, 389 F.2d at 294.[9] *See also Williams v. United States,* 357 A.2d 865, 866 n. 1 (D.C. 1976).

Similarly, in the instant case we are unable to conclude that, assuming error in the submission of the charges of rape and carnal knowledge, the mere submission of these charges for the jury's consideration improperly influenced its verdict on the remaining charges. Here, the jury's determination was entirely reasonable and fully supported by the evidence. The evidence was uncontroverted that appellant carried J.P. into the bedroom against her will, pulled her pants down, and placed his penis on her. The jury appears to have come to the reasonable conclusion that appellant forcibly abused J.P. without her consent, but it was apparently not persuaded beyond a reasonable doubt that appellant had penetrated J.P. The verdict "fitted the evi-

dence" presented to the jury at trial. *Howard, supra,* 128 U.S.App.D.C. at 343, 389 F.2d at 294. *See Ballard v. United States,* 430 A.2d 483, 487 (D.C.1981).

 Appellant further contends that he cannot be charged with both rape and carnal knowledge and that he cannot be convicted of both attempted rape and taking indecent liberties with a minor. We find no error. *See Pounds v. United States,* 529 A.2d 791, 796–97 (D.C.1987); *Ballard, supra,* 430 A.2d at 486–87. His reliance on *Heard v. United States,* 137 U.S.App.D.C. 60, 420 F.2d 628 (1969), *cert. denied,* 397 U.S. 1016, 90 S.Ct. 1252, 25 L.Ed.2d 431 (1970), is misplaced. Although *Heard* held that a defendant could not be convicted of both carnal knowledge and taking indecent liberties where the charges arose out of a single incident, force was not an element of either offense. *Younger v. United States,* 105 U.S.App.D.C. 51, 52–53, 263 F.2d 735, 736–37, *cert. denied,* 360 U.S. 905, 79 S.Ct. 1289, 3 L.Ed.2d 1257 (1959). Attempted rape involves the element of force. In addition, we have found nothing to indicate that the legislature intended to prevent the simultaneous convictions that occurred here.[10]

Accordingly, the judgment is affirmed.

---

**9.** The court also rejected claims of prejudice based on a change in trial strategy because of the death penalty charge. *Id.* at 342, 343, 389 F.2d at 293, 294.

**10.** For similar reasons, there is no merger of offenses with appellant's conviction for enticing a minor. *See Watson v. United States,* 524 A.2d 736 (D.C.1987).