**Carlos A. GARCIA, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 00–CF–1362.**

District of Columbia Court of Appeals.

Argued April 2, 2002.
Decided May 6, 2004.

John A. Tan, Public Defender Service, with whom James Klein and Kali N. Bracey, Washington, DC, were on the brief, for appellant.

Bernard J. Delia, Assistant United States Attorney, with whom Roscoe C.

Howard, Jr., United States Attorney, and John R. Fisher, Mary Patrice Brown, and John J. Soroka, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, FARRELL and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge:

Carlos A. Garcia was tried before a jury on a charge of involuntary manslaughter and convicted of the lesser included offense of negligent homicide. Garcia asks us to reverse his conviction on the ground that the involuntary manslaughter charge was not supported by the evidence. Although the jury acquitted Garcia of that charge, his theory is that its improper submission improperly encouraged the jury to render a compromise verdict. It is, perhaps, a close question whether there was sufficient evidence to support the charge of involuntary manslaughter. We do not answer that question, however, because we are satisfied that any error in submitting the charge to the jury was harmless.

On the morning of the fatal accident that led to his prosecution, Garcia was working as a commercial bus driver. After completing his rush hour route, Garcia was driving his empty bus east on E Street toward North Capitol Street in northwest Washington, D.C. Just before he reached the busy intersection, Garcia called his wife on his cellular phone. There was conflicting evidence as to whether he was still on the phone and possibly distracted as he made a left turn onto North Capitol Street. The light was green, there was no oncoming traffic, and Garcia was not speeding. Nor was he under the influence of drugs or alcohol or otherwise impaired. But as Garcia made the turn, he failed to notice two pedestrians who were already in the crosswalk. One of those pedestrians, who testified at trial, managed to jump out

of harm's way. William Norris, who may have been intoxicated, was not so fortunate. The front left side of the bus struck Norris and knocked him to the ground. Norris fell under the bus and was run over. Garcia only realized he had hit someone when he felt a "bounce" in the rear tires.

Garcia was charged with one count of involuntary manslaughter in the death of William Norris. The trial court denied Garcia's motions for judgment of acquittal and instructed the jury on both involuntary manslaughter and negligent homicide. Shortly after it retired to deliberate, the jury sent a note asking the court to clarify the standard of care for the two offenses. The court responded to the note by reinstructing the jury on the applicable legal principles. The jury deliberated for about five hours and then sent a brief note reporting that it was "hung." With the consent of the parties, the court instructed the jury to continue its work. Soon thereafter, the jury reached a unanimous verdict. It acquitted Garcia of involuntary manslaughter but found him guilty of negligent homicide. Garcia moved for a new trial, which the court denied.

Garcia contends that there was insufficient evidence of egregiousness on his part to justify submitting the involuntary manslaughter charge to the jury. It is true that the standard of culpability is more demanding for involuntary manslaughter than for negligent homicide. "[O]ne who unintentionally causes the death of another as the result of non-criminal conduct is guilty of involuntary manslaughter *only* where that conduct both creates '*extreme danger* to life or serious bodily injury,' and amounts to 'a *gross deviation* from a reasonable standard of care.' " *Comber v. United States,* 584 A.2d 26, 48 (D.C.1990) (en banc) (quot-

ing *Faunteroy v. United States*, 413 A.2d 1294, 1298–99 (D.C.1980)) (emphasis supplied). In contrast, "[a]ny person who, by the operation of any vehicle in *a careless, reckless, or negligent manner, but not willfully or wantonly,* ·· shall cause the death of another, including a pedestrian in a marked crosswalk, or unmarked crosswalk at an intersection, shall be guilty of" negligent homicide. D.C.Code § 50–2203.01 (2001) (emphasis supplied). By statute, negligent homicide is deemed a lesser included offense of any involuntary manslaughter alleged to have been committed in the operation of a vehicle. *See* D.C.Code § 50–2203.02 (2001).

We find it unnecessary to decide whether the prosecution presented sufficient evidence at Garcia's trial to support the charge of involuntary manslaughter. We can say with "fair assurance" that the verdict was not "substantially swayed" by any error in submitting that charge to the jury. *See Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Of primary importance, Garcia was not convicted of involuntary manslaughter. We are not presented, therefore, with an aberrational verdict that must be reversed because it is lacking in evidentiary support. Unless genuine reason exists to think that Garcia somehow suffered prejudice despite his acquittal of involuntary manslaughter, the erroneous submission to the jury of that offense is no reason to reverse his conviction of a properly submitted lesser included offense. *See Cowan v. United States*, 547 A.2d 1011, 1015 (D.C.1988); *Howard v. United States*, 128 U.S.App. D.C. 336, 342, 389 F.2d 287, 293 (1967).

The government persuades us that Garcia suffered no prejudice here. His claim that the presence of the involuntary manslaughter charge improperly encouraged his jury to compromise on the lesser in-

cluded offense is the kind of speculation that *Cowan* and *Howard* rejected as "giv[ing] the jury far less credit than it deserves." *Cowan*, 547 A.2d at 1016 (quoting *Howard*, 128 U.S.App. D.C. at 343, 389 F.2d at 294). The trial court properly and clearly instructed the jury on both involuntary manslaughter and negligent homicide. If arguably there was insufficient evidence of the former charge, certainly there was ample evidence of the latter. Garcia does not contend otherwise. Properly instructed "jurors *are* well equipped to analyze the evidence," *Griffin v. United States*, 502 U.S. 46, 59, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) (italics in the original), and when a deficient case is presented, jurors usually can be expected to recognize it for what it is. There is "no more reason"—less reason, really—"for assuming that jurors have compromised on a verdict when there is an erroneous [evidentiarily unsupported] charge than there is to believe they have simply reached a middle ground when several instructions are correctly given." *People v. Graves*, 458 Mich. 476, 581 N.W.2d 229, 234 (1998) (citation omitted); *see also id.* at 233, 234, 235 (agreeing with the "vast majority of states" that unless "sufficiently persuasive indicia of jury compromise are present," "a defendant has no room to complain when he is acquitted of a charge that is improperly submitted to a jury, as long as the defendant is actually convicted of a charge that was properly submitted to the jury"). Our faith in the jury system would be senseless indeed if we presumed that jurors will be misled by the mere presence of a charge for which sufficient evidence is wanting. We see no sign that the jurors in Garcia's case were led astray. Contrary to Garcia's suggestion, there is no such implication in their jury notes, which reveal little more than that the jurors were conscientious. *See Derrington v. United States*, 488 A.2d 1314, 1334 (D.C.1985) ("Neither the note from the jury requesting, after two hours'

deliberation, a clearer instruction on the meaning of premeditated murder, nor the length of the jury's deliberations suggests to us the verdict was a compromise or that the jury thought the case was 'close.'"). The verdict was internally consistent and a rational response to the evidence at trial.

Garcia relies on cases in which it was error to submit the greater offense to the jury not because there was insufficient evidence to support it but because the defendant had been acquitted of the greater offense in a previous trial and the Double Jeopardy Clause of the Constitution barred renewed prosecution of the charge. *See Price v. Georgia*, 398 U.S. 323, 331, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970); *United States ex rel. Hetenyi v. Wilkins*, 348 F.2d 844, 864 (2d Cir.1965). In such cases the mere possibility that the jury was influenced by the presence of the jeopardy-barred greater charge in reaching its verdict of guilty on a lesser charge has been held enough to require reversal. But two features of those cases distinguish them from this one. First, where there actually is sufficient evidence to support the greater charge, its potential to influence the jury's deliberations is, logically, greater than where the evidence is insufficient, as for argument's sake we presume it was here. Second, where the error in submitting the greater charge to the jury is of constitutional dimensions, the most exacting harmless error test applies: the error cannot be countenanced unless the court can say that it was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). That is not the standard we apply to the non-constitutional error alleged here.

The judgment of conviction is affirmed.