Jamal ABDUS–PRICE and Wesley
D. Kirksey, Appellants,

v.

UNITED STATES, Appellee.

Nos. 02–CF–936, 02–CF–1053.

District of Columbia Court of Appeals.

Argued Jan. 19, 2005.
Decided April 21, 2005.

William G. Dansie for appellant Abdus–Price.

Matthew C. Leefer, Boonsboro, MD, appointed by the court, for appellant Kirksey.

Bernard J. Delia, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, and John R. Fisher, Elizabeth Trosman, and Seth B. Waxman, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB and RUIZ, Associate Judges, and BELSON, Senior Judge.

RUIZ, Associate J.

The appellants were charged, along with another co-defendant, with two counts of assault with the intent to commit robbery while armed. In May 2002, all three men were convicted by a jury on two counts of the lesser-included offense of assault with the intent to commit robbery. On appeal they challenge the sufficiency of the evidence and the prosecutor's closing and rebuttal arguments. Appellant Kirksey also argues that the trial court should have admitted a prior statement of identification—which also included details of the crime that he claims tended to exonerate him—for its substantive truth. Although the latter argument finds some support in a recent case, we conclude that it was not plain error for the trial court not to *sua sponte* admit the statement as substantive evidence. Concluding that there also is no merit to appellants' other arguments, we affirm.

## I.

The appellants' convictions stem from the assault of Andrew McMahon and Katherine Burns, a married couple, on the evening of January 31, 2001. The couple was walking along Adams Mill Road, in the Northwest quadrant of the District, and were returning to their apartment after eating dinner together. As they walked along the road, they noticed four young men walking towards them in the opposite direction. Ms. Burns became apprehensive because the four had their heads down as they approached, and did not converse with each other.

As the couple encountered the quartet along the sidewalk, Ms. Burns and Mr. McMahon walked in-between the four men, so that two of the young men were on Mr. McMahon's right side, and two were on Ms. Burns' left. At this point, the four men attacked the couple. Two of the men grabbed Mr. McMahon, while the other two assaulted Ms. Burns. Mr. McMahon was punched in the face, and fell to the ground. His suit jacket was ripped, and his watch became unclasped as the men pulled at the satchel he was carrying. The two men closest to Ms. Burns grabbed at her person and at the handbag she was carrying. Ms. Burns testified that at one point "somebody pulled a knife on me."

This altercation was observed by a number of eyewitnesses, each of whom confirmed the general details of the couple's assault by the four young men. One of these witnesses was a neighbor, David McMenas,[1] who was also returning home with his wife that evening. They had been walking on Adams Mill Road ahead of Mr. McMahon and Ms. Burns, and had crossed the street to enter their residence as the band-of-four approached. As the McMenases entered the building, their attention was drawn to the altercation by "a lot of shouting and screaming." Upon seeing "Andy [McMahon] and Katie [Burns] being attacked by one or more of the four men," he tried to dial 911 from the apart-

---

1. Mr. McMenas lived in the same apartment building as Ms. Burns and Mr. McMahon. This building was across the street from where the attack took place.

ment's intercom system. Another neighbor, Zoe Bennington, was inside the building, and was drawn to her window by "very frantic yelling" outside. Ms. Bennington only saw the later part of the struggle—which by Mr. McMahon's account only lasted "ten or fifteen seconds"—and testified that in its aftermath Mr. McMahon's coat was torn, and his nose was bloodied. She also saw the young men run away from the scene.

Ginette Cannon and Emily Stern were driving along Adams Mill Road in Ms. Cannon's truck. Ms. Stern testified that as they came upon the scene she observed

> two people that were being, a man and a woman that looked like [they] were being assaulted by four young men and there were, it looked to me like there were two that were assaulting or attacking each of the victims, and were actually trying to, both, all four of them were trying to grab the victims' bags or satchels, they had bags with straps, and trying to grab them and rip them off their back. In fact, at one point two of the attackers sort of swung one of the guys, or the guy, the victim, into the street. It appeared to me that they were trying to take his bag from him.

Ms. Cannon testified that as she was driving, she came upon the assault, and slowed down to provide assistance. As she slowed down, she "leaned on her horn" so as to scare away the attackers. She testified that two men were assaulting Mr. McMahon, and pulling at his bag, while two other men were assaulting Ms. Burns. When she sounded the horn, the men began to disengage from the melee and "slowly jog up the street" in the direction of the adjacent Walter Pierce park. One of the men, who was wearing a dark jacket, kept his hands in the pockets in the front of that jacket as he jogged. Ms. Cannon continued to follow the foursome "for about fifty or fifty-five feet," until she came to a four-way stop at the entrance of the park. As luck would have it, a police cruiser was also stopped at the intersection. As Ms. Stern exited the truck, flagged down the officers, and informed them as to what was going on, Ms. Cannon "noticed [the four attackers] speed up and then jump over a low brick wall and go into a basketball court in the park."

Officer Frank Servis was one of the two officers flagged down by Ms. Stern. After sending a radio call to the dispatcher, he ran after the men as Officer Christopher Petz remained with Ms. Cannon and Ms. Stern. Officer Servis found three young men crouched in a ditch, which was located on the other side of a short fence which separated the park from the National Zoo. Officer Servis kept the three men there, at gun point, while other officers came as reinforcements.

The police conducted show-up identifications of the three suspects. While Mr. McMahon could not identify any of the attackers by face, he did say that the clothing worn by the detainees was similar to that worn by the men who had attacked him and his wife. Ms. Burns demurred making an identification, because she was not wearing her glasses. Ms. Stern similarly declined to make an identification, because she was "unable to get a good look" at the suspects' faces, and therefore could not provide a description beyond their general characteristics. Ms. Cannon positively identified all three detainees as being involved in the attack. In court she testified that appellant Kirksey "was one of the two people that was robbing the female." However, according to Detective Robert Thompson, the officer who conducted the show-up identification, she had told him upon identifying Kirksey that "I

don't know what he did, he was with them."[2]

## II.

The argument that merits some discussion is appellant Kirksey's claim that the trial judge erred in instructing the jury that Ms. Cannon's statement to the officer identifying him as one of the perpetrators ("I don't know what he did, he was with them.") was not to be considered for its substantive truth, but only as a prior inconsistent statement for the limited purpose of assisting the jury in making its credibility determinations with respect to the witness's trial testimony that Kirksey robbed Ms. Burns.[3] At trial, the statement was not proffered by either party as one of prior identification, and no objection was raised concerning the limiting instruction to the jury that they were not to consider the statement for its substantive truth. The trial court has no general duty to instruct the jury sua sponte. See Johnson v. United States, 387 A.2d 1084, 1088 (D.C.1978) (en banc). Rule 30 of the Superior Court Rules of Criminal Procedure provides a mechanism whereby parties may file written requests with the trial judge proposing that certain instructions be given, and it is incumbent upon the defendant to request any desired instructions or lodge an objection to those with which he disagrees. See Super. Ct.Crim. R. 30 ("No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objec-

tion."). Failure to do so will subject review of the issue to the most limited appellate review, that of plain error. See Allen v. United States, 495 A.2d 1145, 1151 (D.C. 1985); see also United States v. Olano, 507 U.S. 725, 732–34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (defining plain error as that which is obvious or plain, affects substantial rights, and results in a miscarriage of justice or seriously affects the fairness and integrity of the trial).

The issue before us, therefore, is whether Ms. Cannon's statement to the police that "I don't know what he did, he was with them," is so plainly one of prior identification that despite defendant's argument that it was to be considered for impeachment, the trial judge should have sua sponte instructed the jury to consider it for its substantive truth. An out-of-court prior identification by an eyewitness is admissible as substantive evidence if the declarant is available for cross-examination. While at common law such statements were considered an exception to the general prohibition against hearsay testimony, see Morris v. United States, 389 A.2d 1346, 1350 (D.C.1978), since 1994 by statute such statements are now "not hearsay" and "are substantive evidence," if the statement was made after perceiving the person identified and the declarant testifies at trial and is subject to cross-examination. Public Safety and Law Enforcement Support Amendment Act of 1994, D.C. Law 10–375, § 4, 42 DC. Reg. 20, 22 (1995) (codified at D.C.Code § 14–102(b) (2001)); Hallums v. United States, 841 A.2d 1270, 1274 (D.C.2004). Specifically,

---

**2.** Detective Thompson's testimony was the only evidence presented by the defense.

**3.** Counsel for one of the co-defendants stated the argument succinctly:

[I]t is particularly important when she says I don't know exactly what he did. It is not,

in my position, to impeach the fact that she is not saying he is one of the attackers. I think she maintains that. Only that she can't say what he did, and I do think that is important, and that is why it becomes an important inconsistent statement.

appellant Kirksey's claim is focused not on that part of Ms. Cannon's statement identifying him as being on the scene, but on the portion where she declared "I don't know what he did"—a statement he claims would have undermined the government's case that he participated in the robbery. He argues that Ms. Cannon's entire statement (including the part about not knowing what he did) was admissible as substantive evidence under *Porter v. United States*, 826 A.2d 398 (D.C.2003), a case decided after the trial in this case. *Porter* repeated that under the common law exception to the hearsay rule [4] "some limited reference in the identification to the criminal act is permissible," but "only to the extent necessary to make the identification understandable to the jury." *Id.* at 410. The same limitation applies to prior statements of identification made admissible by D.C.Code § 14–102(b). *See Brown v. United States*, 840 A.2d 82, 89 (D.C.2004)

(noting that § 14–102(b)(3) "applies to statements of identification, but not to detailed accounts of the actual crime"). Nonetheless, in *Porter* the court permitted, as a statement of prior identification, an out-of-court statement by the complaining witness that not only described the defendant, but also identified his role in several crimes ("the person who took the marijuana and pager and the person who shot at" the complaining witness). *See Porter*, 826 A.2d at 410.[5] Thus, appellant argues, the trial court in this case similarly should have admitted the part of Ms. Cannon's statement that described his role (or rather, Ms. Cannon's ignorance of the role he played) in the robbery.

Because *Porter* had not been decided when the trial judge ruled in this case, any error in limiting the jury's use of the part of the prior statement that is of interest to appellant was not plain or obvious.[6] More-

4. *Porter* did not cite to the statutory basis of admissibility provided by D.C.Code § 14–102(b).

5. As to the extent to which description of the crime may be admitted as part of a statement of identification, *compare Williams v. United States*, 756 A.2d 380, 387 (D.C.2000) (quoting *Battle v. United States*, 630 A.2d 211, 215 (D.C.1993) ("[T]estimony·recounting the details of the [declarant]'s descriptions of the offense would not be admissible under the prior identification exception")), *Sherrod v. United States*, 478 A.2d 644, 660 (D.C.1984) (noting that the declarant's statements made while identifying a suspect from a photo array lay outside the prior identification exception to the hearsay rule), *and Warren v. United States*, 436 A.2d 821, 837 (D.C.1981) (stating that "testimony consisting solely of descriptions or identifications of the complaining witness' assailants are admissible as substantive evidence under the hearsay exception for prior description testimony," and rejecting the government's arguments that other statements in the broader narrative were similarly admissible), *with Porter*, 826 A.2d at 409 (affirming the trial court's decision to allow testimony as to a witness's "identification of the appellants from a photo array and the role

that each played in the crimes"), *and Johnson v. United States*, 820 A.2d 551, 559 n. 4 (D.C. 2003) (noting, but not deciding, that even if portions of the statement did more than identify the suspect, this was permissible because "[t]o be understandable and therefore probative, an identification must have context," and therefore the entire description of the circumstances was "relevant to the identification"). *See also Sparks v. United States*, 755 A.2d 394, 398 (D.C.2000) ("the person who was hitting [me] in the head from behind was [the appellant]") *and Brown*, 840 A.2d at 89 (defendant "sexually abused her" and she "was molested at his home after school," and "it happened a lot of times") (internal ellipses and brackets omitted), cases in which broader narratives were admitted by the trial court as prior statements of identification under § 14–102(b)(3) in prosecutions, respectively, for aggravated assault and child sexual abuse, but scope of the statements was not challenged on appeal.

6. It should have been obvious to the trial judge that the portion of the statement that solely identified appellant ("He [appellant] was with them") was admissible under the prior identification exception to the hearsay

over, there is no manifest injustice, as we doubt that Ms. Cannon's statement that she did not know what appellant Kirksey "did" would have contributed significantly to creating a reasonable doubt in the jury's mind that he might not have participated in the robbery, even if she could not relate his specific role, when other witnesses testified without contradiction that all four men—including appellant Kirksey—participated in the attack. Therefore the judge did not plainly err in giving the limiting instruction.

## III.

 Both appellants argue that there was an insufficient factual basis to justify instructing the jury on the charge of assault with the intent to commit robbery while armed.[7] Specifically, they argue that because no witness could testify which attacker employed a knife in the assault, the use of the knife can only be attributed to appellants on an aider and abettor theory. Although an unarmed accomplice may be found guilty of armed robbery as an aider and abettor, *see Jordan v. United States*, 350 A.2d 735, 737 (D.C.1976), such a theory of liability requires proof beyond a reasonable doubt that the use of the weapon was either known or "reasonably foreseeable" to the unarmed participant. *Hordge v. United States*, 545 A.2d 1249, 1256 (D.C.1988); *Ingram v. United States*, 592 A.2d 992, 1004 (D.C.1991). The argument made here is that because there was no evidence that the use of the knife by one attacker was reasonably foreseeable to the others, there was insufficient evidence that they aided and abetted the greater offense of assault with the intent to commit robbery while armed, and the trial court erred in submitting this charge to the jury.

 Because appellants were not convicted of committing the assault "while

---

rule and D.C.Code § 14–102(b). Understandably, that is not the argument pressed by appellant, who would not have benefitted from a prior consistent statement of the witness identifying him as being one of the four men involved in the robbery.

7. The argument made on appeal is therefore different than that raised before the trial court, where the defendants argued that the " 'natural and probable consequences' language in D.C.'s aiding and abetting instruction takes the essential element of specific intent to commit robbery away from the jury and mandates that they hold [defendants] responsible for all foreseeable crimes, whether intended or not." From this premise, they argued that the jury must be instructed that a required element for liability for aiding and abetting is that the defendants "had personal knowledge that the co-defendants intended to rob the complainant and that one of the co-defendants was armed with a knife." This argument has not been raised on appeal, and therefore we consider it to be abandoned. *See D.D. v. M.T.*, 550 A.2d 37, 48 (D.C.1988) ("points not asserted with sufficient precision to indicate distinctly the party's thesis, will

normally be spurned on appeal") (quoting *Miller v. Avirom*, 127 U.S.App. D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967) (footnotes omitted)).

While the precise argument made on appeal was not presented to the trial court, the principle that "normally" an argument not raised in the trial court is waived on appeal is, however, one of discretion rather than jurisdiction. *See id.* Thus, parties on appeal "are not limited to the precise arguments they made below" in support of their claims, *Yee v. City of Escondido*, 503 U.S. 519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992), and "even if a claim was not pressed below, it properly may be addressed on appeal so long as it was passed upon." *District of Columbia v. Helen Dwight Reid Educ. Found.*, 766 A.2d 28, 33–34 n. 3 (D.C.2001). The propriety of instructing the jury on the greater offense of assault with the intent to commit robbery while armed was an issue at trial, and the judge's ultimate ruling on the issue was couched in terms of whether the evidence was sufficient to support that instruction. Therefore, the issue has been sufficiently preserved and we will address it.

armed," we need not decide whether the evidence was sufficient to support a jury charge on that issue. *See Garcia v. United States*, 848 A.2d 600, 602 (D.C.2004). The longstanding law of this jurisdiction has been that "the erroneous submission to the jury of an offense of which the accused is not convicted is not reversible error unless there is prejudice." *Howard v. United States*, 128 U.S.App. D.C. 336, 342, 389 F.2d 287, 293 (1967); *Cowan v. United States*, 547 A.2d 1011, 1016 (D.C.1988). There is no prejudice in submitting a greater offense, even if unsupported by the evidence, so long as the lesser offense of which the defendant is ultimately convicted is supported by the evidence.[8] *See id.*

Additionally, *Howard* and *Garcia* specifically rejected the same assignment of prejudice which is made in the present case: that the submission of the greater offense caused prejudice because it may have induced a compromise verdict from the jury. *See Garcia*, 848 A.2d at 602; *Howard*, 128 U.S.App. D.C. at 342, 389 F.2d at 293. Such an accusation "giv[es] the jury far less credit than it deserves." *Id.* Although *Garcia* has language suggesting that such prejudice could be shown in some rare cases, *see* 848 A.2d at 603, there is nothing in the present record to raise concern about a compromise verdict.

## IV.

Finally, appellants claim that their convictions should be reversed because the prosecutor engaged in improper argument to the jury. Specifically, they refer to

8. We reject appellant Kirksey's argument that the trial judge erred in denying his motion for judgment of acquittal because the evidence was insufficient to support a finding of guilt on the lesser-included offense of assault with the intent to commit a robbery. In reviewing an insufficiency claim, this court reviews the evidence *de novo* in the light most favorable to the government, "giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact...." *Curry v. United States*, 520 A.2d 255, 263 (1987). The court draws no distinction between direct and circumstantial evidence. *See (Michael) Taylor v. United States*, 662 A.2d 1368, 1371 n. 7 (D.C.1995) (citing *Jones v. United States*, 625 A.2d 281, 288 (D.C.1993)). Reversal of the trial court's denial of a motion for judgment of acquittal is warranted "only where there is no evidence upon which a reasonable [juror] could infer guilt beyond a reasonable doubt." *Curington v. United States*, 621 A.2d 819, 824 (D.C.1993) (quoting *Head v. United States*, 451 A.2d 615, 622 (D.C.1982)).

The law of this jurisdiction is that an intention to rob need not be expressly declared. *See Singleton v. United States*, 488 A.2d 1365, 1367 (D.C.1985). Rather, "it is well established that the jury may infer the intent to rob from the 'totality of the evidence.'" *Long v. United States*, 687 A.2d 1331, 1346 (D.C.1996) (quoting *id.*); *Dowtin v. United States*, 330 A.2d 749, 750 (D.C.1975). This inference may be drawn "not only from the words uttered by the suspect but also from his conduct...." *Owens v. United States*, 497 A.2d 1086, 1090 (D.C.1985); *In re T.H.B.*, 670 A.2d 895, 901 (D.C.1996). In this case there was "evidence upon which a reasonable [juror] could infer guilt beyond a reasonable doubt." *Curington*, 621 A.2d at 824. The witnesses all saw four men accost Mr. McMahon and Ms. Burns. Ms. Stern described all four men as being involved in the assault; all four punching at Mr. McMahon, and grabbing at the belongings of both him and his wife. Similarly, Ms. Cannon testified that she was "100 percent sure that all four individuals participated in the attack." While appellant is correct in noting that the victims' testimony does not establish that anything was verbally demanded, and nothing was actually taken, there was sufficient evidence presented so that the jury could reasonably infer that when the four men assaulted Ms. Burns and Mr. McMahon, they did so with the intent to rob. *See Dowtin*, 330 A.2d at 750; *Singleton*, 488 A.2d at 1367 (finding sufficient evidence to permit the jury to infer an intent to rob, where testimony was presented that the victim was attacked from behind, and his assailant repeatedly grabbed at the back of his pants, *i.e.*, where most men keep their wallet).

their objections to (1) the prosecutor's reference to the victims and some of the government's witnesses by their first names; (2) the prosecutor's reference to Ms. Cannon and Ms. Stern as "two heroes"; and (3) the prosecutor's commentary on the defense. Reviewing the record, it appears as though the prejudice attendant to these statements, if any, is *de minimis*, and the convictions may be affirmed.

In evaluating a charge of improper prosecutorial argument, a sequential analysis is applied. The court first will determine if the challenged actions or comments were improper. *See Bailey v. United States*, 831 A.2d 973, 981 (D.C.2003) (evaluating improper comments made in both the prosecution's opening and closing statements); *Mathis v. United States*, 513 A.2d 1344, 1348 (D.C.1986) (evaluating improper comments made in the government's rebuttal argument). "If so, the court must, viewing the remarks in context, consider 1) the gravity of the impropriety, 2) its relationship to the issue of guilt, 3) the effect of any corrective action by the trial judge, and 4) the strength of the government's case." *Chatmon v. United States*, 801 A.2d 92, 99 (D.C.2002) (evaluating the repeated display of graphic pictures of the victim's bloody corpse by the prosecutor in his closing argument); *Dixon v. United States*, 565 A.2d 72, 75 (D.C.1989) (evaluating the prosecutor's "waving" in front of the jury the bloody shirt worn by the decedent). Where the defense lodged an objection to the challenged statements at trial, and they are found to be improper, this court evaluates "whether we can say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole that the judgment was not substantially swayed by the error." *Mathis*, 513 A.2d at 1348 (citing cases); *Bailey*, 831 A.2d at 981.

Against this backdrop, the first two of the three alleged improprieties may be quickly discussed. Assuming that it was improper to refer to the government's witnesses by their first names, this would not mandate reversal. The impropriety was minimal, the comments were in no way related to the issue of guilt, and the trial judge quickly chastised the prosecutor. All this is to be weighed against the strength of the government's case, and there is no doubt that the government presented compelling evidence of guilt to the jury. The same can be said as to the reference to Ms. Cannon and Ms. Stern as "two heroes." While lauding the actions of key government witness may have more attendant prejudice, it similarly can be said, that when weighed against the strong evidence of appellants' guilt, there is no reason to reverse because of this single comment.

The last challenged argument—one which commented on the proffered defense—raises slightly more concern.[9] These comments should be viewed

---

9. After defense counsel argued in closing that Ms. Burns' testimony was that none of the perpetrators specifically tried to take her bag, but she nonetheless offered her bag to them, the prosecutor rejoined in rebuttal:

... somehow, with regards to the purse, Ms. Burns' purse, [defense counsel] somehow blames her for pushing her purse away while these people are attacking her? She was a victim that night. To victimize her again in this courtroom, to blame her for trying to save herself?

... And then [defense counsel] says nothing was taken that night. There is no evidence of robbery. Why wasn't anything taken? Because Ms. Cannon and Ms. Stern stopped it, came and saved the day, for lack of a better term. What would have happened do you think if those two people didn't step in? ... Where do you think the bag, the

with special scrutiny because they occurred during rebuttal, a point at which "defense counsel has no opportunity to contest or clarify what the prosecutor has said." *Coreas v. United States,* 565 A.2d 594, 605 (D.C.1989) (citing cases). Unlike *Coreas,* where the government advanced a new and different theory on rebuttal, the comments here addressed what had been the central issue of the case from the start, whether the perpetrators had an intent to rob. Moreover, "the prosecutor's basic function is to discuss the evidence, and not every remark that goes beyond that is necessarily improper." *Dixon,* 565 A.2d at 77. While the prosecutor should keep his or her comments within reasonable bounds, the use of rhetoric such as that employed in this case was a means to point out serious logical gaps in the defense's argument that there was no robbery because nothing was taken by the perpetrators. Although the prosecutor's comment that Ms. Burns was being "blamed" and "victimized" by the defense at trial might have been better left unsaid, it was insignificant when compared to the real victimization she suffered on the night she was assaulted. As to that event, the jurors heard from six eyewitnesses, all of whom testified as to the assault of Ms. Burns and Mr. McMahon by four youths. The defendants were apprehended by officers within minutes of the attack and immediately identified by Ms. Cannon as the perpetrators. The only defense offered by Kirksey was based on Ms. Cannon's equivocal statement when she identified him at the show-up that she did not know what he did. The jury was able to assess her credibility on the stand and consider her prior inconsistent statement. Viewing the evidence presented at trial as a whole, we are able to say that the jury's verdict was not likely swayed by the prosecutors's comments. *See Bowman v. United States,* 652 A.2d 64, 71–72 (D.C.1994) (holding that even though the prosecutor had impermissibly encouraged the jury to "send a message," reversal was unwarranted because "the government's evidence was not only strong, but uncontested"); *Morrison v. United States,* 547 A.2d 996, 1000 (D.C. 1988) ("The evidence of appellant's guilt was strong, and we are satisfied that the prosecutor's improper argument did not impermissibly sway the jury toward a guilty verdict.").

Finding no reversible error in the appellants' arguments, their convictions are

*Affirmed.*

watch, their wallets, all those personal items would have ended up? Do you think they would have left them on the ground and moved away, saying that was a lot of fun? Absolutely not. When you answer that question, you know the answer to this case, where those possessions would have ended up.