**Marcel A. JOHNSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 09–CO–1391, 10–CO–122.**

District of Columbia Court of Appeals.

Argued Feb. 24, 2011.

Decided Aug. 25, 2011.

---

Seth M. Galanter, with whom Stephen M. Colangelo, Washington, DC, and Joseph B. Tulman, were on the brief, for appellant.

Kristina L. Ament, Assistant United States Attorney for appellee. Ronald C. Machen Jr., United States Attorney, Elizabeth Trosman, John Mannarino, Mary Ann Snow, Patricia A. Riley, and Ann K.H. Simon, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and OBERLY, Associate Judges, and KING, Senior Judge.

OBERLY, Associate Judge:

On January 27, 2009, a jury convicted appellant Marcel A. Johnson of kidnapping, first-degree sexual abuse, and robbery. One month later, on February 27, 2009, Johnson pled guilty to unrelated charges of assault with a dangerous weapon ("ADW") and possession of a firearm during a crime of violence ("PFCV"). Johnson was sentenced for both the January and February charges on May 15, 2009. On appeal he argues that the sentences imposed upon him were illegal because they "will not provide [him], a person with disabilities who is still eligible for special education under the Individuals with Disabilities Education Act [ ('IDEA') ],[1] with needed educational training." We hold that the sentencing courts appropriately determined that given Johnson's crimes, the danger he posed to the community was too great to sentence him to the type of facility that his lawyers requested. To the extent Johnson believes that the Bureau of Prisons ("BOP") may be denying him services to which he is entitled, Johnson's claims should be presented to the BOP in a civil action.

## I. Facts

Johnson "has had a number of academic, psychiatric, and socially adaptive difficulties since he was very young" and has been diagnosed as having, *inter alia,* a learning disorder, mild mental retardation, and posttraumatic stress disorder. Accordingly, he has received special education and related services pursuant to an Individualized Education Program ("IEP") under IDEA since at least 1999. IDEA dictates that children with special needs "be given 'a free appropriate public education that emphasizes special education and related services designed to meet their unique needs.'" *In re C.S.,* 804 A.2d 307, 314 (D.C.2002) (Reid, J., concurring) (quoting 20 U.S.C. § 1400(d)(1)(A) (2000)). Children like Johnson, who are identified as disabled and have an IEP in place prior to being incarcerated, remain entitled to IDEA services during their incarceration. *See* 20 U.S.C. § 1412(a)(1)(B)(ii).

Johnson appeared before Judge Richter on the morning of May 15, 2009, to be sentenced on the ADW and PFCV charges to which he pled guilty. Johnson's counsel urged the court to allow the parties to "locate a [secure] treatment facility" that would provide "four years of services and treatment" until Johnson turned twenty-two and "age[d] out of special ed,"[2] at which point he could be transferred to an adult prison. Judge Richter, mindful that Johnson was being sentenced later that afternoon on the more serious charges of kidnapping, sexual abuse, and robbery, stated that "[i]f this were the only case Mr. Johnson was facing I have no doubt

---

1. 20 U.S.C. §§ 1400 *et seq.* (2010).

2. Johnson will "age out" on August 11, 2012, his twenty-second birthday. *See* 20 U.S.C. § 1412(a)(1)(A).

that [what Johnson's counsel proposed] is what's best for Mr. Johnson.... I know he's going in front of Judge Weisberg today for sentencing on a much more serious case. It would be [the] expectation that he's going to receive a long adult sentence there, and that I think is a reality that has to color whatever I do." Judge Richter sentenced Johnson to twenty-four months for ADW and sixty months for PFCV, with the sentences to run concurrently.

Johnson appeared for sentencing before Judge Weisberg later that afternoon. His attorneys argued again for the opportunity to locate a "residential facility that [could] educate him," but Judge Weisberg responded that Johnson was "simultaneously, one of the most damaged and one of the most dangerous individuals [he had] encountered in a long career of encountering both damaged and dangerous individuals," and sentenced Johnson to 276 months in prison, "to be served ... consecutively to ... Judge Richter['s] sentence."

In September 2009, Johnson filed motions to correct, vacate, or set aside each of his two sentences pursuant to D.C.Code § 23–110 (2001) and Super. Ct.Crim. R. 35. He argued that he should have been sentenced under "the District of Columbia Youth Rehabilitation Act" to "ensure ... that [he] has access to the special education and related services to which he is entitled as a matter of law," and that his May 15, 2009, sentences were illegal because they "resulted in his placement in a BOP facility ... [where he] is not and cannot receive those IDEA services to which he is entitled." According to Johnson, a "failure to ensure access to those services constituted disability discrimination" and thus his sentences "violated the Americans with Disabilities Act (ADA) [3] and § 504 of the Rehabilitation Act.[4]" Each sentencing judge denied Johnson's motion on the ground that he was in the wrong forum, holding that "[t]o the extent that [Johnson] wishes to argue that his conditions of incarceration deny him disability accommodations to which he is entitled under federal law, these arguments must be addressed to the Federal Bureau of Prisons."

■ On appeal, Johnson argues that the trial judges violated D.C.Code § 24–403.01(a) (2011 Supp.), which requires a court to impose a sentence that "(1) [r]eflects the seriousness of the offense and the criminal history of the offender; (2) [p]rovides for just punishment and affords adequate deterrence to potential criminal conduct of the offender and others; and (3) [p]rovides the offender with needed educational or vocational training, medical care, and other correctional treatment." Johnson claims that § 24–403.01(a) imposes a "mandatory duty" upon a sentencing judge to select a type of institution[5] that provides for all of the enumerated factors, and that the sentencing judges violated the statute by imposing sentences that would be served in an adult prison that does not provide him with IDEA services. The government argues, *inter alia*, that the

---

3. 42 U.S.C. §§ 12101 *et seq.* (2006).

4. 29 U.S.C. §§ 794 *et seq.* (2006).

5. D.C.Code § 24–201.26 provides that "[a]ll prisoners convicted in the District of Columbia for any offense, ... shall be committed, for their terms of imprisonment, and to such types of institutions as the court may direct, to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinements where the sentences of all such persons shall be served. The Attorney General may designate any available, suitable, and appropriate institutions, whether maintained by the District of Columbia government, the federal government, or otherwise, or whether within or without the District of Columbia."

BOP can provide Johnson with education services and that, in any event, the three provisions in § 24–403.01(a) do not create "a mandatory, legally enforceable sentencing rubric."

## II. Discussion

■■■ Johnson did not rely on D.C.Code § 24–403.01(a) in his motions to correct, vacate, or set aside his sentences, nor did he argue during either of his May 15, 2009, sentencing hearings that the statute governed the trial courts' sentencing decisions. Johnson has not waived this argument, however, because everyone present at each hearing, including the judges, was discussing and contemplating the very factors that are enumerated in § 24–403.01(a). "[P]arties on appeal 'are not limited to the precise arguments they made below' in support of their claims," *Abdus–Price v. United States*, 873 A.2d 326, 332 n. 7 (D.C.2005) (quoting *Yee v. City of Escondido*, 503 U.S. 519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992)), "and even if a claim was not pressed below, it properly may be addressed on appeal so long as it was passed upon." *Id.* (quotation marks omitted); *see also Tindle v. United States*, 778 A.2d 1077, 1082 (D.C. 2001) (To avoid the plain error standard on appeal, a trial court must be "fairly apprised as to the question[s] on which [s]he [was] being asked to rule.") (alterations in original) (quotation marks omitted). Furthermore, at oral argument before this court the government repeatedly waived any claim that Johnson had forfeited his D.C.Code § 24–403.01(a) argument.

■■■ We agree with the government that § 24–403.01(a) presents a list of factors for a court to consider when sentencing an offender. Although it provides that a court "shall" impose a sentence reflecting the seriousness of the offense, providing for just punishment, and provid-

ing educational or vocational training, "[t]he literal words of [a] statute ... are not the sole index to legislative intent, but rather, are to be read in the light of the statute taken as a whole, and are to be given a sensible construction." *Jeffrey v. United States*, 892 A.2d 1122, 1128 (D.C. 2006) (second alteration in original). *See also Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.1945) (Learned Hand, J.) ("[I]t is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary."). In some cases, there will simply not be a sentence that could accommodate all three statutory provisions, and in those situations a sentencing judge has no choice but to balance them. "[W]e are not obliged to ignore common sense ... in our effort to resolve the issue," *Moore v. United States*, 508 A.2d 924, 926 (D.C.1986), which is what Johnson urges us to do when he argues that a trial judge must, in every instance, craft a sentence that would accommodate equally every element in § 24–403.01(a).

In this case, both sentencing judges considered and accounted for the factors enumerated in § 24–403.01(a), albeit without citing the statute by name. Judge Richter "read the pre-sentence report, the [Y]outh [A]ct study and the submission from the defense" (which sought placement at a treatment facility). He listened to Johnson's lawyers speak at length about Johnson's troubled past, his mental health history, his educational needs, his "level of entitlement to ... intensive services," and about their preference that he "look at treatment as a first alternative." Judge Richter noted that Johnson had committed a "serious[,] distinct act that does deserve punishment," and his ultimate decision to sentence Johnson as an adult was dictated largely by Johnson's criminal history, *i.e.*, his recent conviction for kidnapping, first-

degree sexual abuse, and robbery, for which he was to be sentenced later that day before Judge Weisberg: "[Y]ou certainly make a compelling case that Mr. Johnson has needs, ... [and if] this were his only case I might be convinced but I cannot ignore what he is facing later today.... That has to color what would be the ... practical approach that's presented to me." Judge Weisberg also addressed the factors required by § 24–403.01(a). He held that "[t]his case, more than any that I [have] had recently, points out the dilemma ... between protecting the community from someone who is demonstrably dangerous and trying to meet that person's need[s] at the same time without causing more harm." Judge Weisberg pointed out Johnson's involvement in "at least five, if not more, robberies and armed robberies ..., [and the fact that Johnson] shot a gun into a bus," and ultimately held that "beyond any shadow of any doubt ... there's nothing ... that's going to stop [Johnson] from engaging in predatory behavior, whatever his educational needs and whatever his psychological and cognitive deficits may be," and that there was "no realistic expectation that [Johnson is] not going to continue to pose a danger to this community for as long as he has the freedom to do so."

To hold that the foregoing analysis by both sentencing judges was insufficient under § 24–403.01(a) simply because neither judge specifically named the statute would exalt form over substance. *See Taylor v. United States*, 324 A.2d 683, 685 (D.C. 1974) ("[I]t was not incumbent upon the [judges] to parrot the statutory words.").

While both judges acknowledged and understood that Johnson suffers from severe emotional and intellectual disabilities, the dangerousness, brutality, and sheer number of his offenses in recent years (and the need to safeguard the community and "[p]rovide[ ] for just punishment") made it impossible, in their view, to accommodate his learning disabilities by sending him to a treatment facility rather than an adult prison. This level of consideration and balancing is all that § 24–403.01(a) demands, and therefore there was no abuse of discretion by either sentencing judge, both of whom found it impossible to craft a sentence that accommodated all three subsections of § 24–403.01(a). *See, e.g., Johnson v. United States*, 628 A.2d 1009, 1015 (D.C.1993) ("While the sentencing process is subject to appellate review for abuse, we find no abuse here.") (citations omitted).

We echo Judge Weisberg's order denying Johnson's motion to vacate: If, while incarcerated at a BOP facility, Johnson is indeed being denied the special education services to which he may be entitled under IDEA, or is being discriminated against in violation of the ADA or § 504 of the Rehabilitation Act, "these arguments must be addressed to the Federal Bureau of Prisons."[6]

The trial judges' denials of Johnson's motions to correct or vacate his sentences are therefore

*Affirmed.*

6. During the sentencing hearing before Judge Richter, Johnson's counsel said: "I'm not saying that [Johnson's] sentence is illegal, but to sue the Federal Bureau of Prison[s] ... we're talking about obviously a two to three year process." Under Johnson's estimation of the time it would take for a suit against the BOP, by this point (more than two years later) he likely could have obtained a decision in the proper forum. At all events, we cannot declare Johnson's sentences "illegal" simply because he contends it would be too time-consuming to follow the appropriate procedural avenue to resolve his claim that BOP is not providing him with services to which he is entitled.