BECKWITH, Associate Judge,
dissenting: .
The court holds that Ellsworth Colbert’s claim under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), fails because he has not demonstrated that the contents of thé North Carolina file were material to his murder trial. Ante at 332. That materiality determination, for me, is genuinely hampered by the fact that the trial court did not review the evidence as potential Brady material and that we do not know what that evidence is.
It is possible, as my colleagues state, that the admission of more details about the North Carolina offense would not -have-changed anything because the jurors, having already accepted that Mr. Colbert acted in self-defense, nevertheless convicted him of manslaughter because they believed he used excessive force. But that is not the only explanation for the jury’s manslaughter conviction. Our cases recognize, for example, that jurors sometimes compromise. See, e.g., Garcia v. United States, 848 A.2d 600, 602 (D.C.2004); Haynesworth v. United States, 473 A.2d 366, 368 (D.C.1984) (referring to “the often necessary process of compromise among jurors in their differing assessments of evidence”); cf. Standefer v. United States, 447 U.S. 10, 22, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980) (stating that juries in criminal cases are permitted “to acquit out of compassion or compromise”). The jury in this cas,e was'[1] also given a provocation instruction, and could have determined that Mr. Colbert was guilty of manslaughter under a theory that he had acted in the *336 heat of passion caused by adequate provocation.
However the jury’s deliberations played out — and even under the excessive-force scenario assumed by my colleagues — it is hard to say that testimony about the details of the North Carolina offense could have had no impact on the verdict, particularly given the glaring evidentiary void at the moment in which Mr. Colbert, inflicted the fatal stab wounds.[1] Those details could have brought to life an offense in which the decedent used a gun to inflict serious injury upon a victim. Perhaps the file would have shown that the decedent’s conviction stemmed from a plea to a lesser offense, and that the decedent had actually committed a more serious crime than that to which he pled, such as assault with intent to kill. A juror who had heard only the unadorned stipulation and testimony that the decedent had “possibly” been in some fights 'might have been left with the sense that the. decedent, though hofltem-pered, was more prone to use less than deadly force in his neighborhood conflicts, and therefore that Mr. Colbert had not acted in self-defense when the decedent attacked him with the shovel. Detailed testimony about the North Carolina assault could have convinced that same juror that the decedent was quite capable of using deadly force, lending strength to Mr. Colbert’s self-defense, claim. If that evidence would convince at least one juror to conclude that the government had failed to disprove self-defense beyond a reasonable doubt — by no means a farfetched scenario — the Brady evidence was material.
The ■ government has the file. No one disputes that its contents are exculpatory. See ante at 331-32. Under the circumstances, it was the government’s obligation to disclose the evidence to Mr. Colbert.[2] To be sure, defense counsel should have done more to focus the discussion on Brady and get the trial court to review the file *337 as Brady evidence and order its disclosure.[3] But counsel’s failure in that regard did not relieve the government of its independent and constitutionally mandated obligation to disclose exculpatory information. Nor can Mr. Colbert have waived his right to challenge the government’s failure to disclose a file when he did not know what the government knew — and what the government was so disinclined to “fe[e]d” him — about the file’s contents. See Brooks v. United States, 39 A.3d 873, 880 (D.C. 2012) (discussing the strong presumption against waiver of a constitutional right and the government’s burden of showing “an intentional relinquishment or abandonment of a known right or privilege” (citation omitted)); Welch v. United States, 466 A.2d 829, 840 (D.C.1983) (requiring a “knowing, intelligent act done with sufficient awareness of the relevant circumstances and likely consequences” (quoting Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970))).
In the end, the extent to which additional details about the. North Carolina offense might have affected the verdict here necessarily depends on the details themselves. Without knowing what that evidence is, we cannot say with confidence that it would not have meaningfully enhanced the evidence of the decedent’s propensity for violence. Consistent with our precedent, this court should remand to the trial court with instructions that it place the North Carolina file in the record and assess the file’s materiality under Brady. See, e.g., Boyd v. United States, 908 A.2d 39, 63 (D.C.2006); Smith v. United States, 665 A.2d 962, 968-69 (D.C.1995) (holding that the trial court abused its discretion by not reviewing a transcript of a witness’s prior testimony for potential Brady material after the prosecutor acknowledged that it contained “minor inconsistencies”). This would allow us to conduct a de novo review of the trial court’s appraisal of the Brady information with the benefit of the actual evidence.

. Although Mr. Colbert made a Brady request prior to trial, this obligation exists with or without a request by the defendant. Strickler v. Greene, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (citing United States v. Agurs, 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)), The North Carolina file came into the government’s possession while the defense still could have used it at trial, and it is hard to imagine that the government would have concluded at that time that the evidence was not at least arguably material. See Cone v. Bell, 556 U.S. 449, 470 n. 15, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009) (noting that "the prudent prosecutor” will "resolv[e] doubtful questions in favor of disclosure”); Miller v. United States, 14 A.3d 1094, 1109 (D.C.2011) (stating that "there is a duty of disclosure even when the items disclosed subsequently prove not to be material”). The concerns the government expressed about "having to represent Mr. Colbert” and "assist his case” or "assist him in his testimony on the stand” by providing him with “detailed ... investigatory .files” that "he may not otherwise have had at his disposal” convey precisely why the government should have turned over the file rather than sought to avoid doing so on the grounds that the evidence might tempt Mr. Colbert to commit perjury on the stand. See Vaughn v. United States, 93 A.3d 1237, 1253 (D.C.2014) (stating that prosecutors "have-an obligation under Brady to assist the defense in making its case”). And in any event such concerns, even if they materialized, do not justify suppression of Brady evidence, but should be dealt with through cross-examination. See, e.g,, Benn v. United States, 801. A.2d 132, 143 (D.C.2002) (noting that a violation of the rule on witnesses may be remedied by allowing opposing counsel to cross-examine the witness on the nature of the violation, rather than by excluding that witness's testimony).

. "In arguable cases, the prosecutor should provide the potentially exculpatory information to the defense or, at the very least, make it available to the trial court for in camera inspection.” Boyd v. United States, 908 A.2d 39, 61 (D.C.2006). Here, the government presented the file to the court, and there was talk of an ex parte review of the file, but the trial court never made a Brady ruling or assessed the contents of the file for Brady materiality.